AYRES, Judge.
This is an action in tort arising out of an intersectional collision between an automobile owned and driven by Weldon C. Ferry, defendant’s assured, and a bicycle owned and ridden by Eugene Reeves, plaintiff’s 9-year-old minor son. Plaintiff appears herein not only in his individual capacity, seeking the recovery of medical and hospital expenses incurred in the treatment of the injuries allegedly sustained by his son, but as the administrator of the son’s estate in seeking recovery of damages for his personal injuries.
The accident occurred at the “T” intersection of Midway and Bernstein Streets in the City of Shreveport. Both are 2-way, asphalt-surfaced streets. The former runs in a general east and west course, the latter north and south, forming a “T” intersection at Midway. There were no stop signs or other signal devices governing traffic at this intersection.
Preceding the accident, Ferry was traveling easterly on Midway; Eugene Reeves, north on Bernstein down a steep grade to the intersection. The point of impact of the collision was 10 feet, 3 inches from the north side of Midway. The bicycle was struck by the right front of the Ferry automobile. The lad’s body was thrown upon and lengthwise of the hood of the car and dropped to the ground on the left side.
Negligence charged to Ferry consisted of his excessive speed and failure to maintain a proper lookout or to keep his vehicle under control. The doctrine of last clear chance was also invoked. Negligence on the part of its assured was denied by defendant, which asserted that the proximate cause, or a contributing cause, of the accident was plaintiff’s minor son’s failure to maintain a proper lookout, or to stop before entering the intersection, or to slow down, or to turn aside so as to avoid the accident.
The record contains no assignment of the reasons for the rejection of plaintiff’s demands. Obviously, the conclusion was reached that Ferry was either free of fault or that Eugene Reeves was, at least, con-tributorily negligent.
*232 If it be conceded, which we think it must, that, by the attainment of sufficient maturity of judgment, young Reeves is chargeable with the consequences of his acts, there can be no question of his negligence in the instant case. Mounting his bicycle near the summit of the hill on Bernstein Street, he exerted the utmost effort of which he was capable to reach the maximum speed attainable on his vehicle before permitting it to coast the remainder of the distance down the hill, a movement which was to carry him into the intersection. That the speed attained was fast, excessive, and reckless was amply established. Moreover, no attention was directed by him to traffic on the intersecting street. He was apparently oblivious to everything but the thrill of the ride. He had been impressively cautioned of the danger by his parents by deprivation of the use of his bicycle for a time. Consequently, his failure to keep a proper lookout or to keep his bicycle under control was a charge fully established, as was the careless and reckless manner of the operation of his vehicle.
However, questions as to Ferry’s negligence and as to his opportunity, under the last-clear-chance doctrine, to avoid the accident are not so easily and readily resolved. In considering these questions, a brief statement of additional facts disclosed by the record appears necessary.
From a point on Midway Street about 200 feet west of the aforesaid intersection, Midway slopes slightly to and beyond the intersection. No obstruction to a motorist’s view, approaching from the west, existed at the southwest corner of the street intersection. The evidence discloses only a tree, for a limited space, partially obstructs the view of the top of the hill to the south on Bernstein Street. As a motorist approached from the west, he had a clear, unobstructed view of Bernstein Street to the top of the hill for a distance of approximately 91 feet. Such a view on Midway was likewise accessible to persons on Bernstein for at least an equal or greater distance from the intersection.
Ferry lived only three blocks west of the scene of the accident. On this particular occasion, he was en route to his church, of which he was pastor, located about a block farther east. As minister of this church, he had, over a period of three years, traversed this route on numerous occasions. He was obviously familiar with the locality, knew of the likelihood of the presence of small children in the vicinity, and knew that they often played in the street; notice of this fact was contained on a sign posted to that effect. Prior to the accident, the hill on Bernstein Street was frequently used by children in the neighborhood as a form of playground.
Ferry actually observed the young bicyclist descending the hill for some considerable distance before either he or the child reached the intersection. He stated that both were proceeding at approximately the same speed, and, consequently, when he observed young Reeves, he must of necessity have been a significant distance from the intersection, for, after accounting for reaction time, he actually skidded his vehicle 64 feet, 3 inches to reach the point of impact. Therefore, Ferry was probably 90 to 100 feet, at least, from the intersection when he observed the boy on his bicycle, who was about equidistant from the intersection.
These findings as to Ferry’s distance from the point of impact of the collision are supported and corroborated by the tables of stopping distances as shown in Blashfield’s Cyclopedia of Automobile Law, Vol. 9C, p. 413, § 6237. These facts evidence Ferry’s speed significantly in excess of the limit of 25 m. p. h. prescribed by ordinance, and, likewise, in excess of his own estimation.
Excessive speed, however, or other negligence in the operation of a motor vehicle, does not necessarily give rise to a *233 cause of action, since, in order to be actionable, negligence must result in injury or damage, and then liability may be imposed only if such negligence is a proximate cause of the accident. Cone v. Smith, La.App.2d Cir., 1954, 76 So.2d 46 (writs denied).
However, in the instant case, Ferry’s speed constituted, in our opinion, a direct, contributing factor and, therefore, a proximate cause of the accident. As heretofore pointed out, Ferry did, in fact, see the lad descending the hill on his bicycle, whereupon he applied his brakes and skidded his car. Had he been proceeding within lawful limits and had taken the same precautions, he could have and, no doubt, would have brought his vehicle to a stop before reaching the scene of the accident. Such excess speed, therefore, was a direct factor and a cause of the occurrence.
In reaching this conclusion, it is unnecessary to give any consideration to the question as to whether Ferry could have, or should have, seen the bicyclist before he actually observed him. It is sufficient that Ferry actually saw the child on the bicycle descending the hill at such a rapid rate of speed he knew the child would be unable to stop. Nevertheless, knowing the locality and the likelihood of the presence of children in the street, a duty of strict observance was imposed upon Ferry.
 Finally, for consideration, on the question of liability, is the doctrine of last clear chance. Where a motorist sees a person in peril, of which such person is not aware, a duty devolves upon the motorist to use every possible available means to avert injury, notwithstanding the negligence of such person, and, if the motorist fails to perform such duty, the last-clear-chance doctrine applies even though the injured person’s negligence continues to the very moment of the occurrence of the accident. A failure of a motorist to perform that duty constitutes the proximate and immediate cause of the injury, and the negligence of the plaintiff, in placing himself in a position of peril, the remote cause. In such cases, application of the last-clear-chance doctrine may be invoked. Jackson v. Cook, 189 La. 860, 181 So. 195; Rottman v. Beverly, 183 La. 947, 165 So. 153; Cox v. Gross, La.App. 1st Cir., 1950, 47 So.2d 102; Iglesias v. Campbell, La.App. 2d Cir., 1937, 175 So. 145 (writs denied).
Had Ferry been maintaining a lawful rate of speed, commensurate with the facts and circumstances of which he was familiar, the evidence is convincing that he could and would have, by the exercise of due diligence, been able to avoid the accident. Nevertheless, he proceeded at an excessive and unlawful rate of speed, and failed to take precautions until too late to avoid the accident. That the boy was in a perilous position, oblivious to Ferry’s approach, and unable to extricate himself from the impending danger, was obvious to Ferry. We therefore conclude that Ferry had the last clear chance to avoid the accident, but, nevertheless, failed to avert the same, which He could have done by the exercise of due diligence.
Lastly for consideration is the question of quantum. The limits of defendant’s contractual liability obviate the necessity of a detailed discussion of the extent and duration of plaintiff’s minor son’s injuries and suffering. The son was rendered unconscious by the shock of the force of the impact of the collision. He was hospitalized for a period of 42 days. He sustained a fracture of the midshaft of the left femur, requiring traction for the period of his hospitalization and for a similar period thereafter. Also sustained was a fracture of the right distal radius which required a reduction of the fracture of the forearm under a general anesthesia. Casts were required for both arm and leg. For a period of 6 to 12 months, a shortening of the left leg would result, in the opinion of Dr. Willis J. Taylor, the treating orthopedist. Pain and suffering, usual to such injuries, were experienced. Hospital *234 and medical expenses shown by statements filed in the record aggregate the sum of $1,554.35.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of the plaintiff, James T. Reeves, in his individual capacity and against the defendant, State Farm Mutual Automobile Insurance Company, for the full sum of $1,554.35, and, further, in favor of James T. Reeves, as administrator of the estate of his minor son, Eugene Reeves, and against the defendant, State Farm Mutual Automobile Insurance Company, for the full sum of $3,445.-65, with 5% per annum interest on each of the aforesaid sums from judicial demand until paid, and for all costs.
Reversed and rendered.
GLADNEY, J., dissents.
Rehearing denied; GLADNEY, J., dissents.