195 So.2d 712 (1967)
Fleet WALLACE
v.
TRAVELERS INSURANCE COMPANY.
MARQUETTE CASUALTY COMPANY
v.
TRAVELERS INSURANCE COMPANY.
Nos. 6923, 6924.
Court of Appeal of Louisiana, First Circuit.
February 6, 1967.
Rehearing Denied March 13, 1967.
*713 Bruce Waters, William A. Norfolk, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellants.
James E. Moore, of Franklin & Keogh, G. T. Owen, Jr., of Borron, Owen, Borron & Delahaye, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
These consolidated appeals result from an automobile accident which occurred within the corporate limits of Holden, Louisiana, at approximately 8:00 A.M., October 21, 1963, when a pickup truck belonging to plaintiff, Fleet Wallace, and being operated by his wife, Sally, was struck by a 1962 Ford owned and being driven by defendant, Grady Stewart, the insured of defendant, American Home Assurance Company (American). The accident occurred when Mrs. Wallace attempted a "U" turn across Highway 190.
Plaintiff, Wallace, instituted suit against Stewart, American, and his own liability insurer, Travelers Insurance Company (Travelers), seeking recovery for personal injuries and related medical expense sustained and incurred by and on behalf of his minor children, Patricia, Tommy and Diane.
Marquette Casualty Company (Marquette), the collision insurer of the Stewart automobile, filed suit against Travelers to recoup the sum of $831.80 paid Stewart for damages caused his automobile in the accident.
Upon finding Mrs. Wallace's negligence the sole proximate cause of the accident and absolving Stewart from liability, the trial court rendered judgment in favor of plaintiff, Fleet Wallace, and against Travelers for the use and benefit of the children in the amounts hereinafter indicated, together with special damages aggregating $228.17. Plaintiff's demands against Stewart and American were rejected. In Marquette's *714 suit on its subrogation claim, judgment was rendered in favor of said plaintiff and against Travelers in the amount demanded.
From the aforesaid judgments Travelers has appealed contending the trial court erred in finding Mrs. Wallace guilty of negligence proximately causing the accident and absolving Stewart from liability. Alternatively, Travelers maintains the awards in favor of the minors are excessive and should be reduced. In essence Travelers argues on appeal that Stewart was alone at fault and should be held solely responsible for the accident.
Petitioner Fleet Wallace has also appealed contending Stewart and his liability insurer were improperly relieved of liability herein. Said appellant also alleges the awards of the trial court are inadequate and should be increased.
We find the trial court has properly resolved all issues presented for determination and affirm his decision.
It is undisputed that in the vicinity of the collision, Highway 190 is a paved two lane thoroughfare, the surface portion of which is 26 feet in width. The highway has rather narrow gravel shoulders and runs in a generally easterly-westerly direction. The accident occurred approximately 175 feet west of the intersection formed by the junction of Highway 190 and Louisiana Highway 440, which latter road runs in a northerly-southerly course and intersects the former at right angles. The intersection resulting from the convergence of these roadways is controlled by a blinking semaphore light which exhibits a red light for traffic proceeding upon Louisiana Highway 440 and a yellow light for traffic traveling along Highway 190 which is the superior thoroughfare. The posted speed limit in the area is 50 miles per hour. A school cross walk is located 484 feet east of the traffic light. Similarly, it is undisputed that immediately prior to the accident Mrs. Wallace was parked facing in a westerly direction on the premises of the Hood Grocery which is situated on the south side of Highway 190 approximately 200 feet west of the aforementioned intersection. Mrs. Wallace desired to drive her children to school situated on Highway 440 north of the intersection with Highway 190. To proceed on her journey she had to reverse the direction of her automobile, drive easterly to the intersection and turn left to travel northerly on Highway 440. Apparently the south shoulder of Highway 190 and the premises adjacent to the Hood Grocery did not afford sufficient room for Mrs. Wallace to turn her vehicle around so she proceeded to make a "U" turn across Highway 190 to drive toward the intersection. While in the act of thus turning, the Wallace vehicle was struck by Stewart's automobile which was traveling westerly upon Highway 190 in its proper lane of travel. The left front part of Stewart's vehicle struck the right front of the Wallace truck. Stewart's vehicle left 90 feet of skid marks commencing in the westbound lane at or about the west end of the intersection and proceeding in the westbound lane to the point of impact. Approximately ten feet from the point of impact the skid marks of the Stewart vehicle veered sharply to the right or north onto the shoulder of the highway. Stewart's vehicle remained in its proper lane until it left the roadway as indicated. Following impact, Stewart's car came to rest on the north shoulder of the highway approximately 10 feet from the edge of the pavement. The Wallace truck traveled a distance of 54 feet and came to rest on the railroad track adjacent to the north side of Highway 190.
The precise point of impact, a crucial factor in this case, is an issue of considerable controversy. Mrs. Wallace's version is that she succeeded in reaching the northern shoulder of the highway and had traveled thereon a distance of approximately 20 feet in an easterly direction with all four wheels of her automobile on the shoulder when she was struck. Stewart, however, stated both *715 vehicles were partly in the westbound lane and partly on the shoulder at contact point. His testimony is to the effect Mrs. Wallace had crossed the highway and was in the act of recrossing to attain the eastbound lane when the impact took place. More precisely, Stewart testified that at the moment of impact the right front of his vehicle was on the shoulder and the left front still in the westbound lane and the position of the truck was such that its right front was on the roadway and its left front wheel on the shoulder.
Mrs. Wallace first testified she looked before crossing the highway and saw no approaching vehicle. She further stated she initially became aware of the presence of Stewart's automobile when she heard its brakes squealing and upon looking up observed the car coming toward her sideways. Later, however, she stated she looked to the east and observed approaching vehicles but concluded they were so distant that she had ample time to make her intended "U" turn. Stewart admitted he was familiar with the area and conceded traveling at a speed of approximately 50 miles per hour as he approached the intersection. When he arrived at the light he noted the Wallace truck crossing the highway and immediately applied his brakes. He testified further that Mrs. Wallace crossed the highway and started to recross but instantly before the impact apparently changed her mind and attempted to turn back toward the shoulder. Stewart simultaneously veered to his right in an attempt to avoid a collision. He estimated that when he first applied his brakes the Wallace automobile was 125 feet away.
Appellants maintain Stewart alone was guilty of negligence proximately causing the accident. They charge Stewart with remission in operating his vehicle at an excessive rate of speed under the circumstances; failing to maintain a proper lookout; and neglecting to heed the caution light. Appellees contend Stewart was operating his vehicle at a lawful rate of speed within the legal limits of 50 miles per hour; that he was in no way negligent and that he was faced with an emergency not of his own making when Mrs. Wallace drove abruptly across the highway and intercepted his lane of travel. Appellees further contend the sole proximate cause of the accident was Mrs. Wallace's negligence in failing to see the oncoming Stewart automobile and accord it the right of way to which it was entitled.
Appellants assert the trial court erred in (1) neglecting to hold that Stewart violated the extreme duty of care imposed upon him by the caution light; (2) failing to hold that Stewart's excessive speed and inattention were the sole proximate causes of the accident; (3) according Stewart the benefit of the sudden emergency doctrine; (4) declining to reject the testimony of the investigating officer, Corporal Van Foster, because of alleged inconsistencies therein, and (5) awarding insufficient damages to the injured minors.
Corporal Foster testified he was summoned to the accident shortly after its occurrence. Based on the presence of glass, dirt and debris found on the surface of the road, he concluded the collision occurred in the manner and at the place contended by Stewart. He found that both vehicles were partly in the westbound lane and partly on the north shoulder at the instant of impact. His testimony is vigorously assailed by appellants on the ground that in his official report he indicated the accident occurred in the center of the highway. The trial court accepted his corrected version as given at the trial wherein Foster conceded the diagram on his report indicated the center of the road as the point of impact. He explained that this error resulted from the fact the space allotted on the printed report form was somewhat restricted, his drawing was not to scale and that in showing the location of impact, he inadvertently indicated the center of the highway. He further stated he vividly recalled the occasion and was *716 positive both cars were partly in the westbound lane at impact. His testimony was straightforward, clear and explicit. No interest or bias on his part was shown. On the contrary, the record indicates a concerted effort on Foster's part to fairly determine the circumstances. His conclusions accord with the physical facts. By actual tape measurement, he determined that Stewart's automobile left 90 feet of skid marks beginning at about the intersection and continuing in the westbound lane their entire length except the last 10 feet which veered sharply to the right or north.
Plaintiffs produced as a witness Duncan H. Smith, owner of a grocery store situated at the intersection. In essence Smith stated he was in his store, heard the sound of brakes, looked up and saw the Stewart car run into the Wallace truck while the latter vehicle was off the highway. On cross-examination Smith testified the Wallace truck was headed northerly when struck and that he did not know whether the rear of the truck was on or off the highway when the impact occurred. On cross-examination he further testified the truck was struck broadside by Stewart's automobile.
Henry Courtney, called on behalf of appellants, testified he was entering the Smith grocery as Mrs. Wallace was making her "U" turn. He heard the noise of brakes, looked around, observed Stewart's car in a skid and watched it until the instant before contact with the truck at which point he closed his eyes. He did not see the actual impact but was certain Mrs. Wallace's car was completely on the shoulder. He stated that after the impact, Stewart's car came to rest with its left front and rear wheels three feet and one foot, respectively, from the edge of the pavement. Courtney disagreed with Smith's testimony to the effect the Wallace truck was headed in a northerly direction when struck. He was certain Mrs. Wallace was proceeding easterly at the moment of impact. He also took issue with Officer Foster's testimony to the effect the impact occurred on the paved roadway.
The last witness of any consequence called by appellants was Ben Wall who, being qualified as an expert, testified as to the speed of the Stewart vehicle predicated upon his examination of the Wallace vehicle and certain assumptions posed by counsel for appellants. The gist of Wall's evidence is that, based on the nature and extent of the damages to the Wallace truck, the skid marks and the type of roadway involved, the Stewart automobile was traveling sixty or more miles per hour. He acknowledged he never examined the Stewart car and that his computations were made on the basis of the roadway being blacktopped at the time of his investigation. He admitted he did not know the character of the roadway on the date of the accident. We place little value on Wall's testimony, first because it does not appear to be founded upon an investigation of all factors which bear upon the accuracy thereof, and secondly, because, as hereinafter indicated, we do not find that excessive speed on Stewart's part was a proximate cause of the accident.
The thrust of appellant's position may be summed up in two generalizations, namely: (1) Stewart was negligent even if driving at the posted limit of 50 miles per hour considering he was faced with a caution light and was proceeding through an intersection adjacent to a school zone, with which circumstances he was thoroughly familiar, and (2) if an emergency existed, it resulted from Stewart's own negligence therefore he is not entitled to the benefit of the sudden emergency rule.
Appellant relies heavily upon the ruling in Reeves v. State Farm Mut. Automobile Ins. Co., La.App., 149 So.2d 230; Landrum v. New Amsterdam Casualty Co., La.App., 149 So.2d 182, and Randall v. Baton Rouge Bus Co., 240 La. 527, 124 So.2d 535.
*717 As indicated by counsel for appellant, the Landrum case, supra, is authority for the proposition that a blinking yellow light at an intersection is notice that the crossing is more dangerous than an ordinary intersection and requires some extra care on the part of a motorist. With this general rule we are in complete agreement. We also acknowledge and adhere to the rule announced in Schroeder v. Mounes, La.App., 52 So.2d 67, which holds a driver guilty of negligence in driving at a lawfully posted speed when circumstances show a reasonably prudent driver would not have done so. We find, however, that under the circumstances surrounding the case at bar, Stewart did not violate either rule relied upon by appellants. It is of the utmost significance that the accident in question did not occur at the intersection but approximately 175 feet to the west thereof. We find, as did the trial court, that the intersection had nothing whatsoever to do with this accident. As Stewart approached the intersection on the favored highway, the crossing was clear of vehicles. There were no pedestrians either children or otherwise visible in, on or adjacent to the highway or intersection. There was nothing whatsoever to impede Stewart's progress and absolutely no factor other than the blinking light to suggest the possibility of danger. Stewart was traveling within the posted speed limit under circumstances which suggested only that, because of the light, he should be alert and vigilant. That Stewart was keenly watchful is demonstrated by his observing Mrs. Wallace's truck as it moved toward the highway and prepared to cross. Until this sudden, unexpected action by a motorist whose vehicle was safely parked completely off the traveled portion of the highway, there was nothing in the area which demanded his traveling at any speed less than the legal limit. The totally unexpected maneuver by Mrs. Wallace created an emergency which no motorist could reasonably be expected to anticipate or foresee.
The Reeves case, supra, is also distinguishable from the case at bar in that the former involved an intersectional collision between an automobile and a bicycle at a "T" intersection in the City of Shreveport. We are not here concerned with an intersectional collision. For the same reason the Randall case, supra, is not decisive of the case at hand.
Assuming the circumstances most favorable to appellants, namely, that Stewart was in fact traveling at an excessive rate of speed under the circumstances, we agree with the trial court such eventuality was not a proximate cause of the accident. Counsel for appellants lay great stress on the fact that following impact the truck traveled a distance of 54 feet and came to rest on the adjacent railroad track. Counsel argues the truck was propelled to its resting place by the force of the impact from which it is concluded the speed of Stewart's automobile must have been considerably in excess of 50 miles per hour. While the truck was in fact extensively damaged, we are unable to conclude the force of the blow alone caused the truck to travel the indicated distance after impact. The truck was moving at the moment of impact and it is quite likely its own momentum and motive power contributed to its progress after it was struck. The accident could as easily have happened had Stewart been traveling at a speed considerably less than the posted limit of 50 miles per hour. While excessive speed is negligence per se as a matter of law, it does not constitute actionable negligence unless it amounts to a proximate cause of the accident. Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264; Leroy v. Methvin, La.App., 81 So.2d 138; Roy v. Broussard, La.App., 177 So.2d 786.
We find that Stewart was faced with a sudden emergency not of his own making and is therefore entitled to the benefit of the sudden emergency doctrine. *718 Our appellate courts have stated on innumerable occasions that a motorist faced with a sudden emergency not of his own creation is not required to react as a reasonably prudent driver under ordinary conditions permitting calm, unhurried and deliberate decision. To escape liability, the law requires merely that such a driver respond in a manner reasonably to be expected of an ordinarily prudent motorist under similar circumstances. When Stewart first observed the Wallace truck start across the highway, he immediately applied his brakes. While he may have avoided an accident by driving to his left instead, he had no assurance such maneuver would in fact avoid an accident for Mrs. Wallace may well have stopped her crossing maneuver had she sooner become aware of Stewart's approaching automobile. Again, as the two vehicles approached each other virtually head-on and both partly on the roadway immediately prior to the impact, Stewart might possibly have avoided a collision by veering to his left instead of his right. He could only surmise what Mrs. Wallace might do. Since the truck was then proceeding across the highway from north to south, he elected to veer to his right which was a reasonable reaction under the circumstances. Unfortunately Mrs. Wallace veered to her left at the same instant and the impact was inevitable. While Stewart's efforts to avoid the accident were not successful, they were reasonable under the attending circumstances and he is therefore relieved of legal liability. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127.
Patricia Wallace, 14 years of age, suffered a two inch laceration across her forehead. The wound requiring suturing but healed leaving a scar which will hereinafter be considered in some detail. She also sustained a blow resulting in a gouged out area approximately 2 × 2 centimeters wide and half a centimeter deep over the occipital region of the scalp. Both lacerations became infected following treatment. She additionally sustained a bruised chest which resulted in pain in that area for a short period following the accident. The scalp injury has caused discomfort from time to time in that the skin covering the injured area has erupted exuding a fluid having the appearance of water. She also suffered from occasional headaches for some time following the accident.
It is contended that award to Patricia Wallace should be materially increased principally on the ground the scar on her forehead is disfiguring. In this connection three photographs marked P-A, P-B and P-C for identification were sought to be introduced in evidence when the testimony of the treating physician was taken by deposition. Counsel for appellees strenuously objected on the ground the photographs were not properly identified. The pictures appear in the record as proffered evidence pursuant to LSA-C.C.P. Art. 1636. However, the objection to their admissibility must be deemed well taken inasmuch as appellant offered no evidence whatsoever to identify the photographs or explain the circumstances under which they were taken.
Our procedural rules require identification of photographs as a condition precedent to their admissibility in evidence. Generally photographs are admissible only if verified or authenticated by extrinsic evidence. The trial court, however, is vested with some discretion in determining the sufficiency of preliminary proof of authenticity. Although the better practice dictates that a photograph be verified and authenticated by the photographer who took it, nevertheless, authentication may be accomplished by the testimony of anyone with sufficient knowledge to aver that the picture fairly represents the subject matter it purports to portray. Launey v. Traders and General Insurance Company, La.App., 169 So.2d 757, and cases therein cited.
*719 In the present case the photographs in question were merely sought to be presented to the treating physician for his evaluation of the disfigurement allegedly resulting from the scar. No effort whatsoever was made by appellant to authenticate the pictures by the testimony of the photographer or anyone else. The treating physician, who saw the patient on several occasions, was not asked whether the photographs fairly represent the condition of the subject's face. In the total absence of any verification whatsoever, the objection to the photographs was well taken and we cannot consider said evidence in our assessment of damages herein. The record shows Patricia Wallace was in court and examined by the trial judge. In written reasons for judgment appearing in the record, the trial court found the scar produced minimal disfiguration. Considering the nature and extent of Patricia's injuries, we find the award of $1,000.00 granted by the trial court neither excessive nor inadequate.
Diane Wallace, 8 years old at the time of the accident, sustained a small laceration of the lower lip and tongue and the loss of a tooth. An increase in said award is sought primarily on the contention the tooth in question was a permanent tooth. The only medical evidence in this respect is that of the treating physician, a general practitioner, who stated the tooth was the fourth right upper tooth, a premolar or deciduous tooth. Although Mrs. Wallace testified she thought the tooth a permanent one, we find the evidence preponderates in favor of the conclusion the lost tooth was a so-called "baby tooth". The injuries suffered by Diane were not particularly serious and the award of $500.00 on her behalf is deemed adequate.
Tommy Wallace, who was approximately 11 years old at time of accident, was allotted the sum of $500.00 for a laceration of the upper lip and bottom portion of the nose, a bruise on his forehead and a fractured nose which appeared to heal without significant incident. The treating physician testified he sustained no permanent injury or disfiguration. We believe the award to be neither inadequate nor excessive.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
Counsel for defendant, Travelers Insurance Company, has pointed out in Application for Rehearing that whereas we affirmed the decision of the trial court in all respects, we inadvertently stated the lower court awarded plaintiff, Tommy Wallace, damages in the amount of $500.00, while in truth and in fact the amount allotted said plaintiff in damages aggregated $250.00.
It being the intent of our original opinion to affirm the award actually made to plaintiffs therein, it is ordered, adjudged and decreed that our initial judgment be amended to affirm the award of the trial court to plaintiff, Tommy Wallace, in the sum of $250.00.
In all other respects our original judgment remains unaltered.
Rehearing denied.