LOTTINGER, Judge.
This is a suit filed by Anthony S. Maealu-so individually and for and on behalf of his minor son, Anthony J. Macaluso,[1] for damages resulting when the motorbike on which young Macaluso was riding ran into a truck owned and driven by T. C. Populis. Made defendants are T. C. Populis, Maryland Casualty Company (Maryland)[2] and Commercial Union Insurance Company (Commercial).[3] Maryland settled all claims against it by the minor, Anthony J. Macalu-so, and Anthony S. Macaluso prior to trial. Judgment was rendered against all three defendants in the amount of $10,000.00, and specifically providing that the judgment against Maryland in the sum of $5,000.00 had been satisfied by payment by Maryland of $5,000.00 pursuant to a minor’s settlement. The remaining defendants, T. C. Po-pulis and Commercial, have perfected this appeal.
The appellant, Commercial, at the time scheduled for argument, after due notice, was neither present nor represented, nor had any brief been filed on behalf of Commercial, nor had any motion been filed for a continuance. Therefore, under the authority of Rule VII, § 5(b), Uniform Rules-Courts of Appeal, this Court ex pro-prio motu, considers said appeal as abandoned, and it is hereby ordered that this appeal on behalf of Commercial Union Insurance Company be dismissed with prejudice.
The record discloses that on July 18,1972, between noon and 12:30 p. m., Anthony J. Macaluso, the then minor, was driving a 1972 Honda motorbike in a southerly direction on South Cate Street in Hammond, Louisiana. The motorbike upon which the youth was driving collided with a 1956 Chevrolet Truck owned and driven by T. C. Populis which was traveling in a westerly direction on Hansen Street. It was defendant’s intended purpose to continue in a westerly direction on Hansen Street through the intersection and across a set of railroad tracks. The intersection of South Cate and Hansen is controlled by a stop sign on Hansen Street. The collision occurred before Mr. Populis was able to successfully cross the intersection.
Riding on the rear of the Honda driven by young Macaluso was his cousin, Anthony Arnonne, and also riding in the same direction on a motorbike was a friend, Phillip Tallia. The Tallia vehicle successfully avoided the accident by weaving around the rear of the Populis vehicle.
Mr. Populis testified that he was driving his pickup in a westerly direction on Hansen Street. He came to a complete dead stop at the intersection of Hansen and South Cate Streets. He looked in both directions and saw no traffic coming toward him. He then pulled out slowly into the intersection and had almost completely passed over the southbound lane of traffic before the accident occurred. His front wheels were completely out of the southbound lane of traffic and his rear wheels were almost out of the southbound lane of traffic. The rear portion of the right door on the pickup truck was hit in the collision and Mr. Populis testified that he did not see the motorcycles until immediately prior to the accident. Sgt. Wesley Robertson of the Hammond Police Department investigated *388 the accident. He testified that both South Cate and Hansen Streets are concrete surfaced and South Cate is a through street. The point of impact was in the southbound traffic lane of South Cate Street. He says the rear portion of the Populis vehicle was struck. He found no skid marks either by the motorcycle nor the Populis vehicle. The point of impact according to his testimony on the pickup truck was the right rear bumper and fender. He testified that the speed limit was 25 miles per hour and the weather conditions were dry and clear.
Anthony J. Macaluso claimed that he was 16 years old at the time of the accident and that he was operating his motorcycle on Morris Street, came to a four-way stop, stopped, took a right on South Cate Street heading south, and then the accident happened. Morris Street is approximately one block north of Hansen Street. He testified that he was going approximately 25 miles per hour when the accident happened and that he saw the truck just in time when it was right in the middle of the street. He testified that his front wheel hit the middle of the right door.
Phillip Tallia testified that he was riding in the right lane about a bike and one-half behind and to the left of Macaluso and traveling at a speed of about 25 miles per hour. When he first saw the truck it was in the middle of the road and he turned into the left lane to go around the back of it. He said he did not notice the Populis truck until he was in the middle of the intersection.
Anthony Arnonne who was riding on the motorbike with young Macaluso testified that they were traveling at a speed of about 25 miles per hour and that he did not notice the vehicle driven by Mr. Populis until right before the accident.
Floyd Baham was parked near the intersection of South Cate and Hansen Streets and testified that he saw Mr. Populis stop at the stop sign, that Populis had already taken off from the corner when Baham turned and saw young Macaluso come around the corner, that the back end of the Populis vehicle was in the southbound lañé of Cate Street at the time of impact, that he felt Macaluso was exceeding the speed limit, and that Macaluso in an attempt to avoid the collision turned to his right or to the west.
The appellant, T. C. Populis, contends that the Trial Court erred in rendering judgment in favor of plaintiffs where they did not carry the burden of proof; in not finding young Macaluso contributorily negligent for exceeding the speed limit, being inattentive and in turning into the pickup truck rather than away from it; in refusing to allow a newspaper photograph of the scene after the accident into evidence; and in granting an excessive award for damages.
Although we are not favored with written reasons for judgment by the Trial Judge, we are of the opinion that there are sufficient facts in the record to lead this Court to the conclusion that the Trial Judge was not manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973), rehearing denied (1973). The only evidence in the record as to whether or not Mr. Populis stopped at the stop sign was the testimony of himself and Mr. Baham and they both did testify that he stopped. It could have been, however, that he did in fact stop yet did not notice the approaching motorcycles and pulled out in front of them. Unless this was the case, it would appear that at least one of the three boys riding the motorcycles would have noticed the truck sooner. Apparently, the Trial Judge believed the version as given by the three young boys.
As to the specification that the Trial Judge erred in disallowing the introduction into evidence of a picture of the vehicles after the accident which appeared in a local newspaper, this Court in Wallace v. Travelers Insurance Company, 195 So.2d 712, 718 (La.App. 1st Cir. 1967), rehearing denied (1967), said:
“Our procedural rules require identification of photographs as a condition precedent to their admissibility in evidence. Generally photographs are admissible *389 only if verified or authenticated by extrinsic evidence. The trial court, however, is vested with some discretion in determining the sufficiency of preliminary proof of authenticity. Although the better practice dictates that a photograph be verified and authenticated by the photographer who took it, nevertheless, authentication may be accomplished by the testimony of anyone with sufficient knowledge to aver that the picture fairly represents the subject matter it purports to portray.” (Citations omitted).
We are, however, of the opinion that the Trial Judge was in error when he disallowed the party attempting to introduce the photograph to adequately lay a foundation by asking questions as to whether the photograph fairly represented the scene depicted therein. However, after viewing the photograph which was proffered, we cannot say that the use of the photograph would have changed the ultimate outcome of the decision of the Trial Court, and thus find no reversible error.
With regard to quantum, LSA-C.C. art. 1934(3) provides in part as follows:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, * * * >>
In considering the effect of the said statute, as well as the jurisprudence as set forth in the landmark cases of Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), rehearing denied (1964) and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), the Supreme Court, in Miller v. Thomas, 258 La. 285, 246 So.2d 16, 19 (1971), said:
“From these decisions, two principles emerge:
(1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision;
(2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.”
Dr. Matta testified that he first saw plaintiff, young Macaluso, in the emergency room in St. Tammany Parish Hospital on July 18, 1972. He said plaintiff was pretty badly injured, and his examination revealed two fractures of the wrists, fracture of the left femur and a cerebral concussion. The young man was taken to the hospital operating room where both wrists were manipulated and placed in casts. A traction pin was also inserted in the proximal part of the tibia in order to be able to put him in traction to try to control the fracture of the left thigh, and control the spasm and pain that accompany such type of fractures.
Plaintiff was admitted to the hospital July 18th and discharged on August 5,1972. About the third day of hospitalization, plaintiff developed a tremendous degree of confusion and disorientation, and started running high fever. He developed fat embolism for which he was energetically treated.
He was again taken into surgery on July 29th, at which time a nail was introduced to bring about proper alignment on fixation of the fractured femur. The nail, as Dr. Mat-ta testified, was approximately 40 centimeters long.
When young Macaluso was discharged from the hospital, he could not use crutches and had to be confined to a wheelchair. He was seen in the doctor’s office on August 18th and the casts on his wrists were removed and metallic splints were applied. On September 15th he was again seen and the splints were removed from his wrists and he was instructed to start bearing some weight on his leg, though he could not drive an automobile. He was finally discharged on December 11, 1972.
We do not feel that, considering the severity of the injuries received by the plaintiff, the Trial Court abused its “much discretion” as provided in Article 1934(3) of the Louisiana Civil Code as well as in the cases cited thereunder.
*390 For the reasons hereinabove assigned, the judgment of the Trial Court will be affirmed, all costs of this proceeding to be paid by defendant-appellant.
AFFIRMED.

. Anthony J. Macaluso became a major prior to trial and was made a party plaintiff during the trial.

. Insurer of Anthony S. Macaluso, and sued under uninsured motorist coverage.

.Sued under the uninsured motorist coverage of a policy issued to the Tangipahoa Parish School Board which listed Mrs. Anthony S. Macaluso as an insured because of the school bus she and her husband owned and operated for the School Board.