441 So.2d 1261 (1983)
Joe John NICOLOSI
v.
LIVINGSTON PARISH SCHOOL BOARD.
No. 83 CA 0200.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*1262 Ernest G. Drake, Jr., Ponchatoula, for plaintiff.
J. Donald Cascio, Denham Springs, for defendant.
Donald Phelps, Baton Rouge, for Ronald J. Gill.
Byard Edwards, Jr., Ponchatoula, for third party defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for damages in tort against a school board and an elementary school principal arising from an incident in which a student fell and was injured on school premises. The trial judge ruled that the school board and the school principal were not negligent and dismissed the petition. This devolutive appeal followed.

FACTS
In May of 1978, the Livingston Parish School Board operated the Albany Elementary School in the Albany community of Livingston Parish. Ronald J. Gill was the principal of this school, and Patricia Nicolosi *1263 and Lottie E. Howell were both students at the school.
Prior to the morning recess (10:00 A.M.-10:10 A.M.) on May 19, 1978, Lottie Howell sent a note to Patricia Nicolosi challenging her to a fight. At first, Nicolosi declined but after being called "chicken" agreed. It was further agreed by Nicolosi and Howell that the fight would take place during recess at the rear of the bandroom on the school grounds, an area designated as "off-limits" to students, to avoid detection. During the course of the fight, Nicolosi fell and was injured. What caused Nicolosi to fall was disputed at the trial.
After Nicolosi fell, she was picked up by Janice Cowart, one of the teachers on recess duty, and taken to the principal's office. Nicolosi was interviewed concerning the incident by the principal. Nicolosi's family was notified of the incident and her sister picked her up from school and took her to their grandmother's house. Nicolosi's mother then took her to the Lallie Kemp Charity Hospital where X-rays were taken and it was determined that she had broken her right hip. Nicolosi was then transferred to the New Orleans Charity Hospital where she was placed in traction. On May 24, 1978, surgery was performed and three Knowles pins were inserted to transfix the fracture. After surgery, Nicolosi was put in a body cast for six weeks. Once the body cast was removed, she was sent to physical therapy to relearn how to walk.
The fracture to the hip has now resulted in vascula necrosis (death of the bone). Nicolosi's right leg is approximately one inch shorter than the left and this causes her to limp. The range of motion in the right leg is limited. Nicolosi cannot engage in activities which she previously enjoyed and experiences considerable pain on occasion.

FACTUAL FINDINGS OF TRIAL COURT
The appellants contend that the trial court was clearly wrong in reaching the factual findings that the pipes, logs and other hazardous objects located back of the bandroom were not in the place where Patricia Nicolosi fell, in not finding that Nicolosi tripped on a pipe embedded in the ground and fell on a railroad tie, in finding that all students of the school had been warned against going in the "off-limits" area located behind the bandroom and in not finding that the defendants were legally at fault and responsible for Patricia Nicolosi's injuries. (Specifications of Error 1, 2, 3, 4 and 11).
Patricia Nicolosi testified that another student, Lottie E. Howell, sent her a note asking her to fight. At first, Nicolosi declined to do so but after being called "chicken" she agreed to the fight. She admitted that the students went behind the bandroom to fight so no one would see them. After the fight commenced, Lottie Howell began winning and Patricia tried to run away from her. In her get-away attempt, Patricia tripped on a pipe and fell on a log injuring her hip. A teacher, Janice Cowart, arrived shortly after Patricia fell and carried her to the principal's office. Nicolosi testified that she knew that the school had rules prohibiting fighting and throwing things other than balls. She also knew that she must go to school on time and must go back to class when the recess bell rang. Nicolosi testified that she was never told not to go back of the bandroom.
Lisa Albin was a student who witnessed the fight and generally corroborated Nicolosi's testimony. Albin testified that after the fight commenced Nicolosi turned to go away and tripped and fell. Albin did not know specifically what Nicolosi tripped on but did observe bricks, pipes and old logs in the area.
Lottie E. Howell testified that she and Patricia Nicolosi commenced fighting close to the rear of the bandroom to avoid detection. Howell testified that after the fight commenced Nicolosi fell. Thereafter, Howell fell on top of Nicolosi, and Nicolosi complained of her hip hurting. Howell denied knowing that students were not to be in the area back of the bandroom.
Dawnice L. King, a student who witnessed the fight, testified that Nicolosi pushed Howell and Howell fell to the ground. Howell got back up and then both *1264 students fell to the ground and rolled around. Howell and Nicolosi got up, Nicolosi tried to flip Howell over but did not quite make it, and Howell fell on top of Nicolosi on the ground. King testified that she had previously tripped on a pipe back of the bandroom but that she did not see anything on the ground where Nicolosi fell. Janice Cowart arrived at the scene within thirty to forty seconds after Nicolosi fell to the ground. King did not have the impression that Nicolosi was trying to run from the fight. King was aware that the area behind the bandroom was "off-limits" to students. She testified that the students went behind the bandroom so they would not get caught.
Janice Cowart, a teacher at Albany Elementary School, had recess duty on the day that Nicolosi was injured. She observed the girls "squared off" and saw each deliver blows or swinging. She immediately proceeded to the area to intervene. When she arrived, Nicolosi was on the ground. Nicolosi said she was sorry that the fight occurred and she did not want anyone to get into trouble. Cowart did not observe Nicolosi running away from Howell and did not observe a log, pipe or brick in the area where the incident occurred. Nicolosi did not tell Cowart that she was running from Howell or that she tripped on a pipe. Cowart carried Nicolosi to the principal's office. Cowart admitted there were no physical barriers or signs warning children of the "off-limits" areas but testified that children were instructed during homeroom about this restricted area.
Genie Quave Douglas was the other teacher on recess duty at the time of the incident. She testified that she observed Howell and Nicolosi close to the back wall of the bandroom. She proceeded to the scene of the incident but arrived after Janice Cowart. She looked around the area to see if anything had been dropped and observed that the ground was clear.
Ronald Johnny Gill testified that he was the principal of Albany Elementary School on the day of the incident. Nicolosi had been a student at the school for almost two full school years at that time. Gill testified that grades 4 to 6 went to recess in the same area, that from 100 to 175 children were at recess in the area and that the area was supervised by two duty teachers. Gill questioned Nicolosi about the incident and she said that she tripped and fell during a fight with Howell. Nicolosi did not say that she tripped on a pipe or that she was attempting to run away from Howell. Homeroom teachers were responsible for advising students that back of the bandroom was "off-limits".
Based on the above testimony and the other evidence of record, the trial judge reached the following factual conclusions:
The incident arose out of an altercation between petitioner and another student at the Albany Elementary School. They went to an off-limits area behind the band room in order to settle their differences by fighting. In the course of their encounter petitioner lost her balance and fell to the ground, sustaining the injuries complained of.
While petitioner contends that her fall was caused by tripping over a pipe while seeking to get away from the encounter, resulting in her falling on logs, her claim is not substantiated by the evidence. Only petitioner and one other student, Lisa Darlene Albin, testified to this version. Petitioner did not relate this account to the duty teacher or the principal immediately following the accident.
Dawn King, a witness to the incident, while testifying that she had seen the pipe in the photo two to three weeks before the fight, and had tripped over it herself, testified that petitioner tried to flip Lottie Howell over. She didn't quite make it, and fell on the ground. She did not see the petitioner attempt to run away from Lottie. She did not see petitioner fall over a pipe, and she did not see anything on the ground at the spot where petitioner fell and rolled around with Lottie.
Lottie Howell testified that petitioner was not trying to run away. She didn't remember seeing anything on the ground and didn't remember hearing petitioner say that she tripped. She fell on top of *1265 petitioner. They were fighting close to the wall of the band room, so as to be out of sight. In her words, if petitioner tripped on anything it was her own shoe laces.
The photographs and testimony of some witnesses indicates that there was football equipment, jumping pits, remnants of a bon fire, and other items situated on a portion of the off-limits area of the school ground to the north of the accident site. However both duty teachers testified that they saw nothing over which petitioner could have tripped, nor was there anything on the ground to hurt her where she fell. Their testimony shows that petitioner was on wet grass in the shadow of the overhang of the band room. This was very close to the building and not in the area where the photographs and testimony indicate that the objects were located.
After carefully reviewing all the evidence of record, we find that there is a reasonable factual basis for the factual findings of the trial court and these determinations are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). These assignments of error are without merit.

ADEQUACY OF TEACHER SUPERVISION
The appellants contend that the trial court committed error when it concluded that there was adequate supervision on the playground and that the presence of more teachers or better placement of those on yard duty could not have prevented the accident. (Specification of Error 5). In particular, the appellants contend that a teacher-student ratio of 1 to 85+ on a school playground is not adequate supervision, particularly when hazardous objects are present on the playground.
The trial judge correctly determined that hazardous objects did not cause the student's fall. He also made the following factual determinations:
There was no evidence to show that the accident could have been prevented had there been more teachers on duty. There were an adequate number of teachers on duty. Petitioner was seeking to avoid detection while engaging in the encounter with Lottie Howell. Two duty teachers arrived on the scene within moments of the encounter in an attempt to stop it. There is no evidence of any negligence on their part.
There is no evidence in the record to show that Patricia Nicolosi or Lottie Howell had propensities for fighting or were otherwise disciplinary problems.
The fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of a school board or its employees. Narcisse v. Continental Insurance Company, 419 So.2d 13 (La.App. 3rd Cir.1982). The evidence shows that as soon as Janice Cowart saw the students "squared off" against each other, she immediately proceeded to the scene in an attempt to stop the fight. The students, by design, went to the rear of the bandroom to avoid detection of their planned fight. The testimony of Laura Knighten, a teacher with 27 years experience, indicated that even with great diligence by teachers it was impossible to stop all incidents on a school ground. Spontaneous and/or planned acts of violence by students on school grounds do not create liability on behalf of the school board and its employees if the school ground is otherwise well supervised. Hampton v. Orleans Parish School Board, 422 So.2d 202 (La.App. 4th Cir.1982); Harris v. Bogalusa City School Board, 393 So.2d 751 (La.App. 1st Cir.1980).
The testimony of the school principal, Ronald J. Gill, indicated that at the recess period in the area where the incident occurred there were between 100 and 175 students supervised by two duty teachers. There is no evidence in the record to show the exact number of students at recess on the day in question. A teacher-student ratio of 1 to 50 or 1 to 87.5 is not inadequate under the facts and circumstances of this case. Hampton, 422 So.2d at 203 (1 to 57); Capers v. Orleans Parish School Board, 365 So.2d 23 (La.App. 4th Cir.1978) (250 to 300 students supervised by 6 to 8 adults); Partin *1266 v. Vernon Parish School Board, 343 So.2d 417 (La.App. 3rd Cir.1977) (1 to 90).
Considering all of the evidence in this case, there is a reasonable factual basis for the ruling of the trial judge on the issue of adequate supervision and this ruling is not clearly wrong. Arceneaux v. Domingue, 365 So.2d at 1333.

EVIDENTIARY RULINGS
In their original petition appellants alleged that Patricia Nicolosi tripped and fell on a log on school grounds while attempting to escape from an attack by other students, that the school board and school principal negligently allowed the inherently dangerous condition to exist and that the school board and school principal failed to provide proper supervision. The school board's answer was a general denial. The principal answered, asserted the student's contributory negligence and assumption of risk as affirmative defenses and third partied the student with whom Nicolosi was fighting.
The trial of this matter was scheduled to commence on March 5, 1982. On February 23,1982, the appellants filed a supplemental and amending petition which alleged that Patricia Nicolosi tripped on logs, pipes and other debris on the school grounds, that she was a child of below average intelligence, that the school board, school principal and school instructors were aware that she was a child of below average intelligence and that as a result of her fall and injuries she suffered severe emotional and psychological trauma. On February 26, 1982, the order permitting the filing of this supplemental and amending petition was signed by a judge other than the trial judge. Rule V of the Court Rules of the Twenty-First Judicial District Court provides that all civil cases will be allotted as soon as they are filed, and that after the allotment an order may not be signed by another judge without the consent of the judge to whom it is allotted. The school principal was served with the supplemental and amending petition on March 1, 1982, and the school board was served on March 2, 1982.
At the trial the appellants called the school principal as an adverse witness under cross-examination. During the course of this examination, the appellants attempted to introduce into evidence an evaluation of Patricia Nicolosi performed by the Special Education Clinic of Southeastern Louisiana University which was completed on March 30, 1978. The defendants objected to this document as an expansion of the pleadings and complained about the filing of the supplemental and amending petition. The trial judge observed that the pretrial conference in this matter was held on November 6, 1981, that the order authorizing the supplemental and amending petition was signed by a judge other than himself, that he did not think it was fair to allow a supplemental and amending petition at a time when the attorneys for the defendants would not have a chance to prepare a defense, and he refused to allow the report in evidence. The report was then proffered by the appellants. Subsequently, Pete Galliano, a clinical psychologist who was part of the team who conducted the March 30, 1978 evaluation of Nicolosi, was allowed to testify about the portions of the evaluation conducted by him and the results of this evaluation.
Also, during the testimony of the school principal, the appellants attempted to introduce into evidence the report of the Science Research Associates, Inc. dated March 25, 1977, showing the individual skills profile of Patricia Nicolosi as it related to the national percentile of students. This document was proffered as Nicolosi Proffer No. 2. The appellants then offered into evidence the national percentile ratings by the Science Research Associates, Inc. for Patricia Nicolosi for March of 1977 and April of 1978. The trial court refused to allow the admission of this evidence, and it was offered as Nicolosi Proffer No. 3. Subsequently, Laura Knighten of the Tangipahoa Parish School system was allowed to testify concerning the results of these two SRA assessment surveys, and Nicolosi Proffer No. 3 was introduced into evidence as Nicolosi-13. The SRA assessment survey results for March of 1977 is a short form version of the test results contained in the SRA assessment *1267 survey dated March 25, 1977, marked Nicolosi Proffer No. 2.
During the examination of the school principal, the appellants attempted to introduce into evidence a school vision screening report dated February 16, 1977, that indicated that Patricia Nicolosi had visual acuity of 20-30 in both eyes. This test also showed that Nicolosi was not farsighted and that she passed her near and far point muscle balance test. The trial court refused to allow this document in evidence, and it was offered as Nicolosi Proffer No. 4.
During the testimony of Pete Galliano, the appellants attempted to introduce into evidence the form by which the teacher of Patricia Nicolosi requested an evaluation by the Special Education Clinic of Southeastern Louisiana University. The trial judge refused to allow the introduction, and it was offered as Nicolosi Proffer No. 5. Also during Galliano's testimony, the appellants attempted to introduce into evidence Special Education Clinic Form No. 25 which purported to be a very short summary of the Clinic's evaluation. Galliano observed that this case analysis was not the one that he participated in because it classified Patricia Nicolosi as retarded educable, whereas the evaluation that he participated in classified her as borderline retarded or a slow learner. This document was offered as Nicolosi Proffer No. 6. The appellants also attempted to introduce through the testimony of Galliano a Special Education Clinic report dated December 5,1978, which was obtained from the records of the Tangipahoa Parish School system. This report indicated that Galliano was not a member of the team which prepared it and no one was produced from the evaluation team to identify the record. This document was offered as Nicolosi Proffer No. 7.
The deposition of Dr. Richard P. Strobach was introduced in evidence as Nicolosi No. 8 on the issue of damages. Subsequently, the appellants offered this deposition on the issue of the capacity of Patricia Nicolosi to be contributorily negligent. The trial judge declined to allow it for this purpose and it was offered as Nicolosi Proffer No. 8.
The appellants in the trial court offered the testimony of Fred Tuton, a clinical psychologist who examined Patricia Nicolosi on January 29, 1982. During the course of his examination as a witness, Tuton was asked to refer to the evaluations of the Special Education Clinic previously referred to as Nicolosi Proffers Nos. 1 and 7. The defendants objected and the trial court sustained the objection because these documents were not in evidence.
The appellants contend that all of the above evidentiary rulings are prejudicial error. The appellants also contend that had the excluded evidence been considered, the trial court would have concluded that Patricia Nicolosi's diminished mental capacity required that she be treated with a special degree of care, that she was incapable of understanding abstract instructions and that she was incapable of being contributorily negligent. (Specifications of Error Nos. 6, 7, 8 and 9).
After an answer has been filed, the authorization of the filing of a supplemental and/or amending petition is within the discretion of the trial judge. La.C.C.P. arts. 1151 and 1155. Insofar as the appellants attempted to expand their pleadings and add new issues shortly before the trial of this matter commenced, the refusal of the trial judge to allow the supplemental and amending petition was within the much discretion granted to him in these matters. Insofar as the proffered and excluded evidence was relevant to the issues of the contributory negligence of Patricia Nicolosi and her damages, these objections are now moot because the trial judge correctly ruled that the school board and the school principal were not negligent. In any event, we have reviewed the proffered and excluded evidence and even if it would have been accepted by the trial court the result would not be changed. These assignments of error are without merit.

DEFENDANTS' PHOTOGRAPHS
The appellants contend that the trial court committed error by allowing the defendants to introduce into evidence twelve *1268 photographs because they were taken in the winter (eight months after the accident) when the grass at the accident site was short, because defense counsel marked on them prior to introduction which could lead or mislead witnesses and distort the view of the photographs and because they were not authenticated by the party who took the pictures. (Specification of Error No. 10).
The defendants presented the photographs during the testimony of Ronald J. Gill, the last witness to testify at the trial. Gill indicated the photographs were taken in February of 1979, there was no change in the locations of the various buildings shown and he was present when the photographs were taken. Gill identified the various objects shown in the photographs and specifically identified the objects which were marked by letters and arrows. (One of the photographs has Gill in it.) The trial judge determined that a sufficient foundation had been presented for the admission of the photographs and that the plaintiffs' objection to the time of the taking and the markings thereon went to the weight and not the admissibility of the evidence. These rulings by the trial court were correct. Coleman v. Landry & Turner, Inc., 423 So.2d 41 (La.App. 1st Cir.1982); Macaluso v. Populis, 339 So.2d 386 (La.App. 1st Cir.1976). This specification of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed. The appellants are cast for all costs of these proceedings.
AFFIRMED.