SEXTON, Judge.
Plaintiff, the worker’s compensation carrier for A.D. Hairston, a pulpwood contractor, appealed to the trial court the rejection of its claim against Louisiana Worker’s Compensation Second Injury Fund for reimbursement of worker’s compensation benefits paid on behalf of Howard Smith, an employee injured in the course and scope of his employment as a cutter/hauler with Hairston. After a trial de novo, as contemplated by LSA-R.S. 23:1378 E, the trial court granted plaintiff’s motion for summary judgment and awarded plaintiff all disability benefits paid to Smith in excess of one hundred and four (104) weeks at $111.23. The Louisiana Worker’s Compensation Second Injury Board now appeals to this court. We affirm.
Attached to plaintiff’s motion for summary judgment is a joint stipulation of fact which provides in pertinent part:
I.
A. On August 23, 1981, Howard Smith was employed by A.D. Hairston as a pulpwood hauler-log cutter. On August 23, 1981, Mr. Smith was injured when hit by a falling tree, while working in the course and scope of his employment with A.D. Hairston.
B. The injury suffered by Mr. Smith was a back injury described as follows: herniated necleus pulposus L 4-5 level. Partial hemilaminectomy at L4 level, bilaterally, and LS level on the left.
C. A worker’s compensation settlement was effectuated on September 21, 1982, between Howard Smith and A.D. Hairston for the sum of $20,500.00.
D. Southern Casualty Insurance Company timely filed a claim with the Louisiana Workmen’s Compensation Second Injury Board on May 13, 1982, seeking reimbursement for all weekly compensation payments payable after the first 104 weeks of payments in the amount of $11,866.08.
E. The Louisiana Workmen’s Compensation Second Injury Board denied the claim on October 7, 1982. The Board *575 found that the pre-existing mild mental retardation and any residual disability from the old medial menisectomy to the left knee did not merge or combile [sic] with the subsequent injury to the back, as required by La.R.S. 23:1371(c). The Board further found that the employer failed to establish that they had knowledge of any pre-existing disability to the employee’s back prior to the subsequent injury of August 23, 1981, and thus did not have knowledge of the pre-existing permanent partial disability as required by La.R.S. 23:1378(A). Said decision was received by Southern Casualty Insurance Company on October 12, 1982.
Additionally, the documents attached in support of plaintiffs motion for summary judgment reflect that Mr. Smith’s intelligence quotient falls within the lowest percentile of the general population, and that an employment search done in the Monroe/Sterlington area for a sixty year old male with Smith’s mental and physical capabilities revealed that Smith was virtually unemployable except in a sheltered work environment. These facts are uncontested. No serious issues remains as to the quality of Smith’s condition. In that posture, this appeal posits the narrow question of the proper interpretation of the term “merger” as defined in LSA-R.S. 23:1371 C(2).
The purpose of the Louisiana Worker’s Compensation Second Injury Fund is explained in LSA-R.S. 23:1371, which reads as follows:
§ 1371. Purpose and construction
A. It is the purpose of this part to encourage the employee [sic] of physically handicapped employees who have a permanent, partial disability by protecting employers and insurers from excess liability for worker’s compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone.
B. This part shall not be construed to create, provide, diminish or affect in any way the worker’s compensation benefits due to an injured employee. The payment of compensation to an injured employee under this chapter shall be determined without regard to this part, and the provisions of this part shall be considered only in determining whether an employer or his insurer is entitled to reimbursement from the worker’s compensation second injury fund herein created.
C.As used in this part, the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
The liability of the fund for reimbursement to an employer is provided in LSA-R.S. 23:1378:
§ 1378. Determination of liability of fund
A. An employer operating under this Chapter who knowingly employs or knowingly retains in his employment an employee who has permanent partial disability, as defined in Subsection (F) hereof, shall be reimbursed from the Second Injury Fund as follows:
# ⅝ # ⅜ ⅝ sjt
F. As used in this Part, permanent partial disability means any permanent condition, .whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.
Where, however, the employer establishes that he had knowledge of the preexisting permanent partial disability *576 prior to the subsequent injury, there shall be a presumption that the employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment where the condition is one of the following:
* s{c ⅜ * sfc ⅝:
(30) Mental retardation, provided the employee’s intelligence quotient is such that he falls within the lowest two percentile of the general population; however, it shall not be necessary for the employer to know the employee’s actual intelligence quotient or actual relative ranking in relation to the intelligence quotient of the general population.
Plaintiff successfully argued to the trial court that Mr. Smith’s permanent partial disability of mental retardation merged with the subsequent back injury to cause a disability materially and substantially greater than that disability which would have resulted had the mental retardation not been present, thus entitling it to reimbursement under LSA-R.S. 23:1378 A(l). Appellant claims that such an interpretation is erroneous. The Board argues that Mr. Smith’s back injury is the same regardless of whether or not he was suffering from mental retardation. Consequently, the Board asserts that the back injury has not “merged” with the mental retardation to create a material and substantially greater disability.
In support of their position, defendants offer in their brief the example of a worker with a five percent disability due to a hand injury who later suffers a back injury causing a fifty percent disability. Appellants contend that no merger occurs as the disability resulting from the back injury alone is the same, fifty percent, regardless of the hand injury, i.e., no excess liability for the back injury is created. On the other hand, the Board argues that an employee with a back injury causing a five percent disability who later suffers another back injury, which causes an additional fifty percent disability of the back disables that employee to an extent greater than fifty percent due to the merger of the two injuries. Thus, as we appreciate it, the essence of the Board’s contention is that in order to qualify as a merger under LSA-R.S. 23:1371 C(2), the subsequent injury must occur to the same bodily member or function.
In approaching this analysis, we are guided by the codal principles regulating the application and construction of laws which provide:
Art. 13. Plain meaning of text
When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.
Art. 14. Ordinary words
The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.
Art. 16. Ambiguous words or phrases
Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning.
Art. 17. Laws in pari materia
Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another.
Additionally, it is well established that courts should construe statutes to give them the meaning intended by the legislature and avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La. App. 2d Cir.1984), writ denied, 452 So.2d 175 (La.1984). Further, a statute is to be interpreted so that no clause, sentence, or word therein is deemed superfluous or meaningless. Washington Parish Police Jury v. Washington Parish Hospital Service, District No. 1, 152 So.2d 362 (La.App. 1st Cir.1963), writ denied, 244 La. 669, 153 So.2d 883 (1963).
Mindful of these principles, we conclude that the lower court properly con *577 strued and applied the merger requirement contained in LSA-R.S. 23:1371 C. The term “merger” has the connotation of two factors occurring in combination. In the context of this statute, particularly LSA-R.S. 23:1371 C(2), we determine that the term connotes either a specific new aggravation of a previous condition, or a new condition which couples or combines with a previous condition to create a “materially greater” disability than that which would have resulted had the preexisting permanent partial disability not been present. Thus, the issue in such cases should be whether the disabilities combine or act in concert to make the worker materially and substantially more disabled than if the worker only suffered from the second injury or condition.
We can perceive of situations where the previous injury would not combine with or merge with a subsequent injury to create a greater disability, such as is possible in the hypothesis posited by the board of the worker with the five percent hand injury and the fifty percent back injury. If these injuries in combination do not increase the workers disability to a materially and substantially greater degree, the statute requirements for merger have not been fulfilled. Each case must be examined in the context of its own facts to determine whether a merger of the two injuries has occurred.
We are strengthened in our view by the fact that the statute is simply not written in such a manner as to support the interpretation advanced by the board that to satisfy the merger requirement in Subsection C(2), the injury must occur to the same function or member. This detailed legislation includes certain conditions within the list of permanent partial disabilities such as hemophilia, epilepsy, multiple sclerosis, cerebral palsy and muscular dystrophy. Considering the purpose and wording of the act and the inclusion of these conditions within the listing of permanent partial disabilities, it seems unlikely that the legislature intended for the act to only apply if those conditions are exacerbated by a subsequent injury. We have difficulty envisioning how an injury could amplify the degree of that condition. On the other hand, we can easily see how an injury would combine with such a condition to create a materially and substantially greater disability which would expose the employer to excess liability. To interpret this statute in such a manner as suggested by the Board would undermine the purpose of the act which is to encourage the employment of physically handicapped employees having a permanent partial disability by protecting the employers and insurers from excess liability.
We have little difficulty within the context of these facts in finding that the previous statutorily defined permanent partial disability, mental retardation, merged with the subsequent back injury to create a substantially greater disability. Whereas the back injury without the mental retardation, or the mental retardation without the back injury would not necessarily preclude Mr. Smith from’obtaining employment, the superimposition of one disability upon the other renders Mr. Smith virtually unemployable. Such a construction of the term “merger” affects the most usual signification of the word. We therefore hold that the two injuries have “merged” within the meaning of the statute.
For these reasons, the judgment of the district court awarding plaintiff disability benefits paid to Smith in excess of 104 weeks at $111.23 is affirmed. All costs of these proceedings are assessed against the Louisiana Worker’s Compensation Second Injury Fund, insofar as such costs may be taxed against the State.
AFFIRMED.