481 So.2d 650 (1985)
CROWN ZELLERBACH CORPORATION
v.
The LOUISIANA WORKMEN'S COMPENSATION SECOND INJURY BOARD.
No. CA 84 1081.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Writ Denied March 7, 1986.
*651 Bradley Lewis, Bogalusa, for plaintiff.
David Sanders, Baton Rouge, for defendant.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment denying plaintiff appellant's request for reimbursement from the Louisiana Worker's Compensation Second Injury Fund. Plaintiff, Crown Zellerbach Corporation, sought recovery from the defendant fund under LSA-R.S. 23:1371 and 23:1378 for worker's compensation benefits paid to Lonnie Hall, Sr.
Mr. Hall, 59, suffered a torn rotator cuff in his right shoulder on January 27, 1982, while in the course and scope of his employment. As a result of the injury, Mr. Hall is unable to use his right arm normally and is disabled. Mr. Hall has declined to have surgery performed. Crown Zellerbach alleged that Mr. Hall had a preexisting permanent partial disability (diabetes and other medical conditions) which caused Mr. Hall's disability from the injury to his shoulder to be substantially greater than it would have been had the only problem been the rotator cuff tear. Specifically, the plaintiff claimed that Mr. Hall's preexisting medical condition caused Mr. Hall to refuse corrective surgery which would enable him to return to work. After hearing the testimony and reviewing the evidence, the trial court determined that the evidence was insufficient to show that any preexisting condition had affected Mr. Hall's decision to forego surgery, and denied plaintiff's claim. We agree and affirm.

BACKGROUND
Following Mr. Hall's on-the-job injury to his shoulder, plaintiff filed a Notice of Claim with the defendant board seeking reimbursement, in accordance with LSA-R.S. 23:1378(B).[1] A hearing was held before the defendant board on August 4, 1983. As a result of the hearing, the board denied plaintiff's claim, finding that the preexisting diabetes did not merge with the subsequent shoulder injury.
The plaintiff appealed within the thirty day time limit afforded by LSA-R.S. 23:1378(E)[2] and instituted suit in the Twenty-Second Judicial District Court. A trial de novo was held in accordance with LSA-R.S. 23:1378(E) on May 17, 1984. It is from the judgment of the trial court denying plaintiff's claim that plaintiff perfected the appeal now before the court.

*652 DISCUSSION
The Louisiana "Second Injury Fund" entitles an employer, under certain circumstances, to reimbursement for compensation paid to an employee. The purpose of the fund is to encourage the employment of handicapped persons "by protecting employers and insurers from excess liability for worker's compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371(A).
One of the key elements in this statute is the need for a preexisting permanent physical disability. The party seeking to prove a right to recovery must first prove that the employer knowingly employs or retains an employee who has a permanent partial disability. LSA-R.S. 23:1378(A). Permanent partial disability in this context means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hinderance in regard to obtaining employment. LSA-R.S. 23:1378(F). Where the employer shows he had knowledge of the preexisting disability prior to the subsequent injury, a presumption exists that the employer considered the conditions listed in LSA-R.S. 23:1378(F) to be permanent. Diabetes is one of the listed conditions. Once the preexisting permanent disability is established, the employer must prove a merger between the disability and the subsequent injury. In the instant case, the employer must show that "the disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent disability not been present." LSA-R.S. 23:1371(C)(2). (Emphasis ours).
Plaintiff contends that the trial court erred in holding that plaintiff had failed to prove Mr. Hall suffered from preexisting diabetes. In the answer to plaintiff's petition, the defendant admitted that Mr. Hall had preexisting diabetes mellitus. An admission in a pleading falls within the scope of a judicial confession and is full proof against the party making it. LSA-C.C. art. 1853 (formerly Art. 2291). Smith v. Board of Trustees, 398 So.2d 1045 (La.1981). The admission has the effect of waiving evidence as to the subject of the admission. Dairyland Ins. Co. v. Trail, 459 So.2d 1368 (La.App. 3d Cir.1984). Therefore, since the defendant has admitted Mr. Hall suffered from diabetes, the plaintiff was relieved from proving the existence of that condition.
Plaintiff also contends that the trial court should have found that the plaintiff possessed knowledge of the preexisting condition as required by LSA-R.S. 23:1378(A) and (F). Charles K. Summers, deputy director of the defendant's board, testified that the board considers that an employer has knowledge of a preexisting condition "if a person in a hiring or firing capacity had actual knowledge of the specific disability". Testimony by the plaintiff's comptroller, William L. Blackwood, showed that information about Mr. Hall's diabetes was contained in his personnel file, but Mr. Blackwood could not state whether or not anyone with the ability to hire and fire had actually seen the information. However, Mr. Summers admitted that the defendant board did not dispute the fact that the plaintiff had the requisite knowledge.
Therefore, it must be determined whether or not a merger occurred between the preexisting condition and the rotator cuff tear. The plaintiff contends that Mr. Hall refused surgery which might correct his disability from the rotator cuff tear because of his diabetes. Mr. Hall did not testify in the case.
The trial court noted that the plaintiff did not prove the severity of any preexisting condition which would be necessary in order to say what effect it would have on whether or not Mr. Hall elected to have surgery. All three doctors who testified, either by deposition or on the stand, admitted *653 that they had no first hand knowledge of the extent of Mr. Hall's diabetes.
The trial court also stated that age was stressed as much as other conditions in the doctor's report. A review of the medical records shows that the uncertainity of the outcome of the operation itself could also have been a factor considered by Mr. Hall.
Dr. Daniel S. Sinclair, an orthopedic surgeon who examined Mr. Hall, testified in his deposition that he left the decision in regard to surgery up to Mr. Hall after explaining the risks and benefits of surgery to him. In regard to the surgery, Dr. Sinclair indicated that where repair surgery is performed, it is still possible that a patient's physical condition might not improve, even if there were no additional medical problems. Dr. Sinclair further stated:
The surgery for this condition is not very good; that is to say, there are some where virtually one hundred percent of the patients we operate on get excellent results and return to essentially normal function. This is not one of those situations... The bottom line is number one: The results are not as good as we would like them to be. Number two: It does require a major anesthetic ... There are risks attached to it, especially in a person who's sixty years old with diabetes, high blood pressure, and heart trouble and problems of this sort.
* * * * * *
In this case, I told him that if he could live with the pain, if the pain wasn't too bad, even if he didn't have normal function, he could never raise his arm above his leg, if he could feed himself and function in a reasonably satisfactory fashion that probably would be the best direction to go at, to leave well enough alone.
Dr. Sinclair testified that the greatest effect of the diabetes would be to increase the surgical risk. He stated "I think that incidents of complications of infection, of poor wound healing, of anesthetic reactions and so forth would be higher in the group that had the medical problems."
Dr. Roger P. Blitz, an orthopedic surgeon who examined Mr. Hall, stated that he would have recommended surgery had the patient not had the previous medical problems. He suggested to Mr. Hall that Mr. Hall consult with his family physician as to the surgery. He also testified that "Rotator cuff surgery tends to leave a lot to be desired ..."
Therefore, a thorough review of the record shows that the evidence is insufficient to prove that Mr. Hall declined surgery because of the diabetes. Moreover, no facts were introduced to show that the diabetes had any effect on the severity of the rotator cuff tear itself, or on the chances for repair of the torn cuff had Mr. Hall elected to have surgery. The most that could be said is that the record showed that the recovery period from the surgery might have been prolonged by the preexisting diabetes. Dr. Sinclair stated, "We go in and hopefully we will make the patient better. But we will never allow a person to believe that they are going to have an absolutely normal shoulder." He further indicated that it is possible that someone without additional medical problems may not be helped by the surgery, and that even if Mr. Hall were to have the surgery, he might still suffer the same disability to his shoulder and arm.
We agree with the defendant that there must be a causal link between the preexisting condition and the second injury. The two must combine so that the resulting injury is materially and substantially greater than the disability resulting from the second injury alone. The facts shown in the record simply do not show that a merger occurred in the instant case.
Therefore, for the foregoing reasons, we affirm the trial court's denial of the plaintiff's claim. Costs of this appeal are to be borne by the plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1378(B) reads as follows:

The employer or his insurer, whichever of them makes the payments or becomes liable, shall, within fifty-two weeks after the first payment of weekly compensation or death benefits, notify the board in writing of such facts and furnish such other information as may be required by the board to determine if the employer or his insurer is qualified for reimbursement from the worker's compensation second injury fund. Upon proper showing, the board may extend the filing period provided under the provisions of this Subsection.
[2] LSA-R.S. 23:1378(E) reads as follows:

Written notice of the decision of the board shall be given to all parties to the hearing, and the decision of the board shall be final; however, an appeal therefrom may be taken by any of the parties within thirty days after the date of written notice to the parties to the decision. If an appeal is taken, the board shall be made party defendant and service and citation shall be made, in accordance with applicable law, upon the attorney general or one of his assistants. The appeal shall be to the district court for the parish wherein the hearing was held or to the court having jurisdiction as provided by R.S. 23:1312 and R.S. 23:1313 for suits under this chapter. All appeals in all such cases shall be tried de novo.