YELVERTON, Judge.
This is an appeal from a judgment in favor of Louisiana Hospital Association Workmen’s Compensation Group Self Insurance Fund and Gary Memorial Hospital, and against Julienne Auguillard, discontinuing medical and worker’s compensation benefits, on a finding by the trial court that Auguillard had recovered from her work-related accident by December 1982. The judgment denied the Fund’s claim for reimbursement of medical benefits and compensation voluntarily paid since December of 1982.
*1119 Only Auguillard appeals. She assigns two errors: (1) the trial court admitted over her objection of hearsay six medical reports of doctors, and (2) the decision that she was able to return to work in December 1982 was clearly wrong. We find no merit to either of these assignments. We affirm.
The trial court gave excellent written reasons for judgment, and these reasons are set out in the attached Appendix.
Appellant insists that the admission of these narrative medical reports was reversible error. We do not agree. While the state of the law on this issue is unsatisfactory, recent decisions indicate that the mere fact that proffered evidence is hearsay is not sufficient grounds to exclude it in a worker’s compensation case. See Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982), and cases cited therein. See also Malone & Johnson, Worker’s Compensation, § 390, 14 La. Civ.L. Treatise 297 (2nd Ed. 1980). In the present case the medical reports were primarily introduced to establish defendant’s undisputed medical history; they were not introduced to establish defendant’s present medical condition. Also, as implied by the closing paragraph of the trial court’s opinion, little or no reliance was placed upon those reports in the court’s final analysis of the case. The trial court emphasized its primary reliance upon the in-court testimony of Dr. James Blackburn as well as the deposition of Dr. D.E. Richardson.
La.-R.S. 23:1317 requires that all findings of fact must be based on competent evidence. In the present case it is clear that the trial court based its findings of fact upon competent evidence and that the evidence strongly supported the trial court’s conclusions. For these reasons we find that no prejudice resulted from the admission of these reports.
The evidence as a whole also strongly supports the court’s determination that disability ceased as of December 1982. This determination is a finding of fact which an appellate court may not overturn except where there is clear error. Ducote v. J.A. Jones Const. Co., 471 So.2d 704 (La.1985). This is especially true in a case where the weight of the evidence involves credibility determinations. Ducote v. J.A. Jones Const. Co., supra; Cormier v. Save-Time, Inc., 497 So.2d 404 (La.App. 3rd Cir. 1986). While the medical evidence also includes hospital records and depositions, which involve no credibility evaluations and which an appellate court can evaluate as well as a trial court, we find no evidence in that portion of the record which causes us to disagree with the trial court’s conclusions. Dominick v. CNA Ins. Co., 497 So.2d 758 (La.App. 3rd Cir.1986). Finding no error affecting the result reached by the court below, we affirm, appellant to pay the costs of this appeal.
AFFIRMED.
REASONS FOR JUDGMENT
The plaintiffs in this matter, Louisiana Hospital Association Workmen’s Compensation Group Self Insurance Fund and Gary Memorial Hospital, brought action for a declaratory judgment seeking to terminate their obligation under workers’ compensation to the defendant, Julienne Au-guillard. Trial on the merits was held on June 19, 1985.
Julienne Auguillard was employed as a nurses’ aide at Gary Memorial Hospital in Breaux Bridge, St. Martin Parish, Louisiana. On August 28, 1981 she fell and sustained injuries. Plaintiffs have since that date paid workers’ compensation and medical benefits. Plaintiffs contend that Julienne Auguillard ceased to be disabled at some point during the past four years and is now malingering. Defendant asserts her continued and permanent disability and claims some amounts recently unpaid together with penalties and attorney’s fees for their nonpayment.
Documentary evidence and testimony was introduced in this matter. Plaintiff introduced twenty exhibits, namely: employer’s report of injury, four medical depositions, five hospital medical records, seven doctors’ reports, invoices of payments made by plaintiff, letter to one doctor who has not been paid in full, and the deposition of defendant. The defendant proffered an *1120 additional copy of one hospital record. Testifying for the plaintiff were psychiatrist Dr. James Blackburn and plaintiffs adjuster. Testifying for the defendant were the defendant, her husband, her sister, a friend and two co-workers.
The documents and witnesses establish the following facts. At approximately 9:30 p.m. on August 28, 1981 Julienne Auguil-lard slipped and fell near a utility room in Gary Memorial Hospital. There were no witnesses to the accident. She reported the accident to her supervisor but felt well enough to drive herself home. By the time she reached home acute pain had set in. She called her husband to the car. He drove her back to the hospital where she was admitted as the patient of Dr. Ernest Yongue, her long-time physician. The admitting diagnosis was possible strain of the neck and low back, mild, and acute anxiety state with depressive reaction.
The medical records introduced into evidence in this matter detail nearly four years of complaints of pain. During this time no physician consulted — and the number is legion — diagnosed an objective explanation.
Julienne Auguillard was hospitalized at Gary Memorial Hospital from August 29 through September 11, 1981. On that date she was referred to Dr. James McDaniel at Our Lady of Lourdes Hospital, Lafayette, for an orthopedic consultation. The findings were negative. She was returned to Gary Memorial where she was discharged at her request. She was again admitted to Gary Memorial on October 7, 1981 with an admitting diagnosis of acute hysteria and strain of neck and low back. She was transferred to the Acadiana Mental Health Clinic where she had previously been an outpatient. There she was under the care of Dr. David Rees. The admitting diagnosis was hysterical reaction. She remained until October 19, 1981 when she was discharged at her request. She was again admitted to Gary Memorial Hospital on October 20, 1981, again with an admitting diagnosis of acute hysteria, strain of the neck, mild. During this hospitalization, and during others according to some of defendant’s witnesses, she was at times restrained both by arm restraints and a Posey vest. She was discharged on October 28, 1981.
Mrs. Auguillard’s problems continued. Her primary physician was now Dr. E.W. Kinchen but she was seen by a number of other physicians including Dr. William Meuleman, Dr. Thomas LaBorde and Dr. James LaFleur. She was hospitalized at Our Lady of Lourdes Hospital in November, 1981 and January 1982. It is undisputed that she continued to complain of pain and display hysterical reaction to it. The consensus of the medical opinion is that her pain had no mechanical or neurological cause but rather was caused by pre-acci-dent emotional problems triggered by the injury.
In November of 1982 Julienne Auguillard was referred by Dr. LaBorde to, and admitted into, the Pain Rehabilitation Unit at Hotel Dieu Hospital in New Orleans. The admitting diagnosis was back pain and depression. Here she was seen by a battery of medical personnel including therapists, orthopedists, the staff psychiatrist, Dr. Edward C. Norman, and the Chairman, Dr. D. E. Richardson, a neurosurgeon. She received extensive and expensive treatment in the management of her condition and, according to the records, responded satisfactorily. When she left the Unit on December 1, 1982 Dr. Richardson wrote in his discharge summary and his report to the referring physician that she had no physical disability and could return to her job assignment at any time from an objective point of view.
Julienne Auguillard was seen in one follow-up visit by Dr. Norman and periodically for almost two years by Dr. Richardson. In August, 1983 Dr. Richardson found that she had “drifted back into her usual status since leaving the Pain Rehabilitation Unit” and further that:
“She has made several statements on the Pain Unit that she did not intend to go back to work before leaving the Unit, and I think that we have unrealistic expectations for her to give up her symptoms and return to active employment *1121 based on her attitude and the rather marked functional overlay that has been obvious all along. She made the statement on leaving the office that she was going to find some doctor who would operate on her.”
In October, 1984 Julienne Auguillard was discharged from the Unit. Dr. Richardson wrote:
“She is taking depressant medications, complaining of left-sided syndrome with pain in the arm and leg. The patient is still having psychogenic pain, but does not want to accept this. All of her studies are within normal limits and she won’t address the problem appropriately by seeking psychiatric help.”
Between December, 1982 and the present time Julienne Auguillard has had many episodes of pain and hysteria. She has continued to be seen by physicians. On three occasions she has been hospitalized and received extensive diagnostic tests. The medical evaluation remains the same. Plaintiff has paid the medical costs of these episodes (with the exception of a few not yet documented items) in the total amount of some $46,000.00. Obviously seeing no end to the medical costs, which appear not to be directed to the real problem, plaintiff sought judicial relief. The Court here grants relief, for the following reasons.
The medical records of the Hotel Dieu Pain Rehabilitation Unit detail what may only be characterized as state of the art treatment for chronic pain. When subjected to that treatment Mrs. Auguillard’s problem was alleviated. A review of the record leads one to the inevitable conclusion that the failure of Mrs. Auguillard to continue the recommended treatment resulted from a conscious decision on her part to refuse to get better.
Dr. James Blackburn’s in court testimony in this matter is that Julienne Auguil-lard is suffering from a factitious disorder with physical symptoms and that there is a high probability that she is malingering a significant percentage of the time. His professional opinion is that she has a histrionic personality disorder which causes her to act out distress in order to obtain secondary gain. Although this condition preceded the injury, she was always able to work. It is his opinion that she could work again, if she would, and although she would have exaggerated emotional reaction to situations perceived as stressful, between those reactions she would be totally functional. It is his opinion that she would benefit from a return to work. The Court finds his testimony persuasive.
On cross examination defendant elicited from Dr. Blackburn the opinion that if a patient is restrained in four-point restraints for any length of time, and further subjected to humiliating treatment, that mistreatment might cause post traumatic stress disorder. He then elicited testimony from his witnesses of such mistreatment of Mrs. Auguillard in Gary Memorial. In summation he vehemently argued that causation. However, Dr. Blackburn further opined that if ill treatment in Gary Memorial was indeed the cause of her emotional problem, Julienne Auguillard would not continue to pursue further medical treatment, especially in hospital settings. And she does so.
The Gary Memorial Hospital records and the testimony of defendant’s witnesses concerning her hospitalization are not pursua-sive that mistreatment actually occurred to the degree claimed or that it preceded the emotional reactions.
Defendant further argues that the plaintiff failed to call or depose the present treating physician, Dr. Kinchen, and that failure should raise a presumption against the plaintiff. Defendant claims that he could not afford depositions of doctors who would be favorable to his case. However, all of the medical evidence in these voluminous records is consistent, including the records which contain the notes and reports of the uncalled physicians. There is no reason to presume that their testimony *1122 would or could differ from that of the doctors deposed.
Defendant argues in post-trial brief, relying on Hughes v. Webster Parish Police Jury, 414 So.2d 1353 ([La.] Ct.App. 2 Cir. 1982), that the burden is upon the plaintiff to prove, by positive and convincing evidence, that Julienne Auguillard is a malingerer. And defendant further argues, relying on Miller v. United States Fidelity and Guaranty, 99 So2d 511 (La.App. 2 Cir., 1957), that a disability is nonetheless real because its causation is imaginary. However, the case of Babineaux v. Consolidated Aluminum Corp., 389 So2d 818 (La.App. 3 Cir., 1980) is equally significant. When dealing with disability from mental causes the Court must proceed with the utmost caution due to the possibility of the symptoms being easily feigned. In that case the Court was pursuaded by the testimony of two orthopedists and a neurosurgeon that the employee was a malingerer and rejected the testimony of a psychiatrist that he suffered from a depressive neurosis caused by a work related accident.
After a thorough study of medical records covering ten years prior to the accident and almost four years since, being particularly impressed by the records of the Hotel Dieu Pain Unit, and considering all of the depositions and the testimony herein, particularly the deposition of Dr. Richardson and the testimony in court, under cross examination, of Dr. James Blackburn, it is the opinion of the court that Julienne Auguillard was sufficiently recovered from the physical and emotional effects of the accident to be able to return to work in December of 1982. The preponderance of the evidence of events since that time persuades the Court of malingering. However, in view of the fact that medical benefits and compensation were voluntarily paid since December, 1982, no reimbursements of those amounts is warranted. Carter v. Montgomery Ward & Co., Inc., 413 So2d 309 (La.App. 3 Cir., 1982).
A judgment to this effect will be signed upon submission.
OFFICIALLY GRANTED AND SIGNED in Chambers, in New Iberia, Louisiana, this 10th day of July, 1985.
/s/ Anne Lennan Simon JUDGE