604 So.2d 46 (1992)
AMERICAN GENERAL FIRE AND CASUALTY COMPANY and City National Bank
v.
The LOUISIANA WORKER'S COMPENSATION SECOND INJURY BOARD.
No. 91 CA 0648.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
Rehearing Denied August 12, 1992.
Writ Denied November 13, 1992.
*47 Leonard Cardenas, III, Baton Rouge, for plaintiffs-appellants American General Fire & Cas. Co. and City Nat. Bank.
Marcia E. Avery, Baton Rouge, for defendant-appellee State of La. Workers Compensation Second Injury Bd.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a judgment, denying a request for reimbursement from the Louisiana Worker's Compensation Second Injury Fund.

BACKGROUND
On October 24, 1986, while in the course and scope of her employment as a teller at City National Bank (Bank), Lena Ferguson fell from a footstool. Ferguson was hospitalized with back pain shortly after her fall. The Bank's worker's compensation insurer, American General Fire and Casualty Company (American General), paid Ferguson $5,510.70 in worker's compensation benefits and $12,938.90 in medical benefits. American General also paid Ferguson $30,000.00 pursuant to a settlement agreement.
American General and the Bank sought reimbursement from the Louisiana Worker's Compensation Second Injury Fund (Second Injury Fund) for the funds American General paid Ferguson. American General and the Bank alleged that Ferguson injured her back in April of 1986, and that the Bank, knowing of Ferguson's back condition, continued to employ her.
The Second Injury Fund Board (Board) denied the request for reimbursement, finding that the employer had not sufficiently established its knowledge of a preexisting permanent partial disability prior to the injury of October 24, 1986, as required by LSA-R.S. 23:1378 A. The Board determined that the disability caused by the injury of October 24, 1986, was not materially or substantially increased by the existence of a preexisting disability. The Board also determined that there was no merger or combination of injuries as required by LSA-R.S. 23:1371 C(1) and (2).
American General and the Bank applied to the district court for a trial de novo, pursuant to LSA-R.S. 23:1378 E. After the trial, which was held November 2, 1990, the trial court determined that American General and the Bank were not entitled to reimbursement from the Second Injury Fund. From this judgment, American General and the Bank appeal, assigning the following errors:
1. The trial court erred in refusing to allow into evidence the December 8, 1987 narrative medical report from Dr. Jack F. Loupe based on a finding that LSA-R.S. 23:1317 does not apply to a claim made against the Louisiana Worker's Compensation Second Injury Fund.
2. The trial court erred in finding that the plaintiffs did not carry their burden of proof by establishing that Lena Ferguson suffered a "re-injury" of the same condition that resulted in her disability.
In addition, American General and the Bank filed a motion with this court to strike the appellee's brief.

MOTION TO STRIKE
American General and the Bank requested that the appellee's brief be stricken on the grounds that it was not filed timely.
Rule 2-12.12 of the Uniform Rules of the Courts of Appeal states:
Untimely Briefs; Sanctions. If the brief on behalf of any party is not filed by the date that the brief is due, the party's right to oral argument shall be *48 forfeited. The court may also impose other sanctions including, but not limited to, dismissal of the appeal when the appellant does not file a brief as provided for in Rule 2-8.6.
Striking a brief is a harsh remedy. See Williams v. Fischer, 439 So.2d 1111, 1112 (La.App. 1st Cir.1983). Under the circumstances of the instant case, we find that the sanction prescribed in Rule 2-12.12., forfeiture of the appellee's right to argue orally, is sufficient penalty for the tardiness of appellee's brief. Therefore, American General's and the Bank's motion to strike the brief of the Louisiana Second Injury Board is denied.

REIMBURSEMENT
The purpose of the Second Injury Fund is "to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers and insurers from excess liability for worker's compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371 A.
One of the key elements that a party seeking reimbursement from the Second Injury Fund must prove is that the employee had a preexisting permanent partial physical disability of such seriousness as to constitute a hindrance in regard to obtaining or retaining employment. LSA-R.S. 23:1378 F; Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d 650, 652 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). In addition, the employer must prove a merger or causal link between the disability and the subsequent injury. Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d at 653. According to LSA-R.S. 23:1371 C, the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
The term "merger" as used in LSA-R.S. 23:1371 C connotes either a specific new aggravation of a previous condition or a new condition which couples or combines with a previous condition to create a "materially greater" disability than that which would have resulted had the preexisting permanent partial disability not been present. Southern Casualty Insurance Company v. Louisiana Workmen's Compensation Second Injury Board, 478 So.2d 573, 577 (La.App. 2nd Cir.1985).
In the instant case, the deposition of Dr. James A. Poche was introduced without objection at the trial. Dr. Poche saw Ferguson after her back complaints in April of 1986, and after her fall in October of 1986. Dr. Poche stated that Ferguson was admitted to the Lady of the Lake Hospital emergency room in April of 1986 with back pain. Dr. Poche found no objective signs of any neurologic difficulty and suspected that Ferguson's symptoms were more of a mechanical nature. Dr. Poche felt that Ferguson's chances for recovery were good. Ferguson was observed for several days in the hospital and underwent several medical tests. One of the tests revealed an abnormality in her L4-5 level disc. Dr. Poche considered Ferguson only temporarily disabled while she was in the hospital in April. According to Dr. Poche, Ferguson "never manifested very significant signs of disc problems." Dr. Poche stated that Ferguson "had a bad back. It was the same in April as it was in October."
The deposition of Dr. Leo P. Blaize, III was also introduced without objection. Dr. Blaize treated Ferguson for high blood *49 pressure and chest pain beginning in 1984. Dr. Blaize did not see Ferguson in connection with the back pain she experienced in April of 1986. In November of 1986, after her fall in October, Dr. Blaize saw Ferguson who was complaining of headache and back pain. Dr. Blaize found that Ferguson had high blood pressure. Ferguson's symptoms, particularly the high blood pressure and the back pains, led Dr. Blaize to hospitalize Ferguson in November of 1986. Several tests were performed on Ferguson while she was in the hospital in November of 1986. According to Dr. Blaize, the tests revealed a disc protrusion, which existed at the time of Ferguson's April, 1986, admission to the hospital.
Several of Ferguson's hospital records were introduced without objection. In conjunction with Ferguson's November 27, 1986, discharge from the hospital, Dr. Blaize reported that the "CT lumbar spine demonstrated mild right paracentral disc bulge at L-4,5, unchanged from previous scan of 4-8-86." Dr. Blaize noted a "small right lateral disc herniation at L-4, L-5." The report of Dr. Randel A. Patty, radiologist, revealed that tests performed April 8, 1986, showed "[a]t L4-5, there is a right lateral disc protrusion consistent with a small focal disc herniation."
Ferguson testified that, as a teller, her duties included typing and helping out in the stock room. Ferguson stated that on occasion she was required to lift boxes weighing approximately forty pounds. Ferguson stated that after she was treated for back pain in April of 1986, she stayed home from work for four to six weeks. Ferguson admitted that when she returned to work in April of 1986, she did so without any medical restrictions on her activities.
Ferguson testified that after her fall in October, she could not do her job because her back was hurting. Immediately after her injury in October of 1986, Ferguson returned to work at the Bank for three or four days. Thereafter, she stopped working. Subsequently, when Ferguson attempted to get other jobs, she was told she was not needed. Ferguson has not been employed outside her home since she left the Bank. Ferguson stated that she is a housewife, baby sits, and occasionally types her daughter's reports for school.
After reviewing the entire record, we cannot say that the trial court erred in denying American General's and the Bank's request for reimbursement. Although Dr. Poche described Ferguson's symptoms of October 1986 as a "re-injury," the facts adduced at trial support the finding that American General and the Bank failed to establish that in April of 1986, Ferguson had a permanent partial disability as defined LSA-R.S. 23:1378 F. See Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, 576 So.2d 1133, 1136 (La.App. 3rd Cir.), writ denied, 580 So.2d 383 (La. 1991). There was no evidence that, after Ferguson was treated for complaints of back pain in April of 1986, her activities were limited for medical reasons. There was no medical evidence that, after April of 1986, Ferguson's back condition was so serious that it posed a hindrance to obtaining or retaining employment. Further, even assuming that, as of April of 1986, Ferguson was suffering from a permanent partial disability, American General and the Bank failed to show that she suffered from a "materially greater disability" after her fall in October, 1986.
Only an employer who knowingly employs or retains an employee who has a permanent partial disability may be reimbursed from the Second Injury Fund. LSA-R.S. 23:1378 A; Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, 576 So.2d at 1135; Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d at 652. Since we find that the facts support the finding that the employer failed to establish the merger of a preexisting permanent disability with a second injury resulting in a materially greater disability, we find it unnecessary to discuss the facts concerning the employer's knowledge of Ferguson's alleged disability of April, 1986.

*50 EVIDENTIARY RULING
At the trial, American General and the Bank attempted to introduce into evidence a narrative medical report by Dr. Loupe, dated December 8, 1987, to show that, based on an initial diagnosis that Ferguson had a herniated disc in April of 1986, Dr. Loupe recommended surgery after Ferguson's October, 1986, fall.
The following exchange took place at trial:
[BY MR. CARDENAS, COUNSEL FOR AMERICAN GENERAL AND THE BANK]
Q. All right. Were you ever discharged from any physician's care?
[FERGUSON]
A. No, I just didn't have the money to pay to go back. They wanted to do the surgery but I just couldn't afford it.
Q. All right. Which doctor wanted to do surgery?
A. Dr. Loupe.
Q. All right.
THE COURT: Have we got anything from him in the record?
MR. CARDENAS: That's what I was going to offer, your honor. I had at one point suggested that I would just offer the report of Dr. Loupe rather than having his deposition taken. I think there was some objection.
MS. AVERY [COUNSEL FOR SECOND INJURY BOARD]: I would object to letting the report going into evidence.
MR. CARDENAS: And in connection with her testimony I would offer it, and in light of the Louisiana Workers Compensation Act being liberal in terms of not necessarily following the Code of Evidence, I would like to offer that report, one of Dr. Loupe's reports in connection with her testimony and let the court address whatever weight it feels necessary.
MS. AVERY: Judge, I would object to the medical reports of Dr. Loupe going into the evidence, that would be hearsay testimony.
THE COURT: Normally I let reports in when it's the claimant's case, usually the lawyers agree. But this is a claim for money from the comp carrier, which is a little different. Ya'll should have had that agreed in advance, I'm not going to let it in, you can proffer it.
The trial court refused to admit the report, whereupon counsel for American General and the Bank proffered the medical report of Dr. Loupe.
We specifically do not rule on whether the proffered evidence was properly excluded because, after a careful independent review of the entire record including the proffered evidence, we find that admission of the proffered evidence would not have changed the result.[1]Johnson v. Masur, 493 So.2d 881, 889 (La.App. 3rd Cir.1986); Nicolosi v. Livingston Parish School Board, 441 So.2d 1261, 1267 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1243 (La. 1984). Cf. Catalanotto Wallace v. Upjohn Company, 535 So.2d 1110, 1118 (La.App. 1st Cir.1988), writ denied, 539 So.2d 630 (La.1989); McCarroll v. Kinchen, 526 So.2d 484, 489-90 (La.App. 1st Cir.), writ denied, 532 So.2d 158 (La.1988); Parker v. South Louisiana Contractors, Inc., 370 So.2d 1310, 1313 (La.App. 1st Cir.), writ denied, 374 So.2d 662 (La.1979). The proffered narrative medical report falls short of showing that surgery was recommended. Instead, the report reveals that Dr. Loupe merely presented surgery to *51 Ferguson as an option for treatment.[2] The proffered medical report does not show that Ferguson's condition was materially and substantially worse after her fall in October of 1986 than it was in April of 1986. Nor does the report show that Ferguson's condition in April of 1986 constituted a preexisting permanent partial disability. See Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, 576 So.2d at 1136.

CONCLUSION
For the foregoing reasons, American General's and the Bank's motion to strike the brief of the Second Injury Board is denied. Additionally, the judgment of the trial court, denying the request for reimbursement from the Second Injury Board, is affirmed. The Bank and American General are assessed with all costs on appeal.
AFFIRMED.

ON REHEARING
PER CURIAM.
It has been called to our attention in an application for rehearing by American General and City National that, in our original opinion, we failed to apply the presumption of LSA-R.S. 23:1378F(26). The application for rehearing also suggests that this court erred in failing to find that the worker's first injury merged with her second injury, resulting in a greater disability than had the preexisting permanent disability not been present. American General and City National allege that the record establishes that they are entitled to reimbursement from the fund under LSA-R.S. 23:1371C.
LSA-R.S. 23:1378F sets forth that, if an employee suffers from certain conditions and the employer knew of the condition, the employer is presumed to have considered the conditions to be a hindrance or obstacle to employment. LSA-R.S. 23:1378F provides as follows:
As used in this Part, permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtain any employment or to obtaining re-employment if the employee should become unemployed.
Where, however, the employer establishes that he had knowledge of the preexisting permanent partial disability prior to the subsequent injury, there shall be a presumption that the employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment where the condition is one of the following:
* * * * * *
(26) Ruptured intervertebral disc.
It was uncontroverted that prior to her October, 1986 fall, Ferguson underwent treatment for a herniated disc, the condition set forth in LSA-R.S. 23:1378F(26). Assuming that the employer had knowledge of this condition, American General and City National would have been entitled to the presumption of LSA-R.S. 23:1378F and our original opinion, which failed to give the employer and its insurer the benefit of this presumption, would have been in error.
However, even applying the presumption set forth in LSA-R.S. 23:1378F, we find that American General and City National failed to establish their entitlement to reimbursement from the Second Injury Fund. The law is clear that American General and City National may recover from the Second Injury Fund only by proving that Ferguson's on-the-job injury merged with her preexisting permanent partial disability (herniated disc) to cause a greater disability than would have resulted from the subsequent injury alone. See Employers National Insurance Company v. Louisiana Workers' Compensation Second Injury Board, 532 So.2d 535, 536 (La. App. 1st Cir.1988); Rockwood Insurance *52 Company v. State, Workers' Compensation, Second Injury Board, 508 So.2d 621, 623 (La.App. 2nd Cir.1987); Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d 650, 652 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La. 1986); Southern Casualty Insurance Company v. Louisiana Workmen's Compensation Second Injury Board, 478 So.2d 573, 577 (La.App. 2nd Cir.1985).
As we noted in our original opinion, the evidence of record supports the denial of the claim for reimbursement in that American General and City National failed to establish that Ferguson's previous disability merged with her second injury resulting in a materially greater disability. The record shows that although Ferguson suffered a re-injury of her back, her condition after the subsequent injury was no greater than it was following her initial injury.
Dr. James A. Poche, the neurosurgeon who treated Ferguson after both injuries, testified Ferguson had a bad back, but that her back was in the same condition after the October, 1986 accident as it had been after the April 1986 accident. Dr. Poche noted that a CT scan performed in April revealed an abnormality at the L4-5 level. When Ferguson returned to Dr. Poche in October of 1986 after her re-injury, Dr. Poche determined that her exam was very exaggerated, and he found no objective signs of any difficulty. Dr. Poche opined that Ferguson never manifested any significant signs of disc problems. In fact, Dr. Poche even questioned whether Ferguson's complaints in April or October of 1986 were caused by the disc at the L4-5 because her symptoms were more of a mechanical type, connoting muscles, ligaments, and joint capsule difficulties. With regard to Ferguson's physical condition to perform her job, Dr. Poche opined that she did not have any physical problem which would have prevented her from working.
Dr. Leo P. Blaize, III, the internist who examined Ferguson in November of 1986, testified that the CT scan performed after the initial injury in April of 1986 and the CT scan performed after the subsequent injury in October of 1986 revealed similar results. In his discharge summary, which was introduced as Exhibit D, Dr. Blaize noted that the CT scan demonstrated a mild disc bulge at L4-5, which was "unchanged from previous scan" of April of 1986.
The only evidence to suggest that Ferguson's condition worsened as a result of the subsequent injury was the testimony of Ferguson herself, which suggested that after the October 1986 accident she did not feel that she could work any longer.
Our review of the records supports the trial court determination that American General and City National are not entitled to reimbursement from the Second Injury Board.
For these reasons, the application for rehearing is denied.
NOTES
[1] Prior to its amendment by Acts 1988, No. 938, LSA-R.S. 23:1317 A stated that in the adjudication of a worker's compensation claim, "[t]he court shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence...." This language has been interpreted to allow the introduction of some hearsay evidence, including narrative medical reports, in worker's compensation cases. See Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042, 1044 n. 4 (La.1982); Butler v. Barrios, 506 So.2d 805, 806-07 (La.App. 1st Cir.), writ denied, 508 So.2d 71 (La.1987); Louisiana Hospital Association Workmen's Compensation Group Self Insurance Fund v. Auguillard, 503 So.2d 1118, 1119 (La.App. 3rd Cir.1987). But see Clark v. Atlantic Painting Company, 521 So.2d 505, 511 (La.App. 4th Cir.1988).
[2] In the proffered report, Dr. Loupe stated that Ferguson "should give consideration to percutaneous lumbar disc excision at L4-5 and L5-S1 as an outpatient. The nature, prognosis and possible major complications of this procedure are explained to the patient and her husband this date." (emphasis added).