AMY, Judge.
Plaintiff, City of Jennings, appeals the district court’s review of the decision of Defendant, the Louisiana Worker’s Compensation Second Injury Board. Defendant denied the plaintiffs recovery from the Worker’s Compensation Second Injury Fund. Pursuant to La.R.S. 23:1378(E), the plaintiff appealed the decision to the Thirty-First Judicial District Court. The district court found in favor of the defendant, citing in its Reasons for Judgment, the plaintiffs failure to establish merger as required by La.R.S. 23:1371(C)(2). For the reasons which follow, we affirm.
DISCUSSION OF THE RECORD
The record reveals that Edmund Crochet was an employee of the plaintiff in 1990 when he injured his back in the course and scope °f his employment. The parties stipulated, before the district court, that the plaintiff subsequently paid worker’s compensation disability benefits and medical expenses for Crochet. The record further reveals that, as a result of this work-related back injury, Crochet underwent a | laminectomy and disc *619 excision at the L4-5 level and a decompres-sive laminectomy at the level of L5-S1.
In July 1992, the plaintiff filed a claim with the Louisiana Worker’s Compensation Second Injury Board for benefits paid to and on behalf of Crochet. The basis for the plaintiffs claim was that Crochet had previously been diagnosed with diabetes. The plaintiff contends that because of this prior condition, Crochet required a consultation with an internist both before and after the back surgery was performed.
Upon applying to the Louisiana Worker’s Compensation Second Injury Board, the plaintiffs claim was denied. Pursuant to La.R.S. 23:1378(E) [1], the plaintiff appealed to the district court. The parties submitted the case to the district court on stipulations and depositions. The only issue before the district court was whether “merger” occurred between the employee’s two conditions. The district court subsequently denied the plaintiffs claim and dismissed it, with prejudice, after finding that the evidence presented did not establish merger between the previously existing diabetes and the work-related back injury.
The plaintiff timely perfected this appeal and assigns a single error: that the district court erred in finding that there was no merger of the employee’s preexisting permanent partial disability, diabetes, and his work-related injury producing a disability which is materially and substantially greater than that which would have ^resulted in the absence of the preexisting permanent partial disability.
ANALYSIS
According to La.R.S. 23:1371(A), the Louisiana Worker’s Compensation Second Injury Fund was created “to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers ...” from excess liability for disability which may result “when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone.” An employer who knowingly retains an employee suffering from a permanent partial disability is due reimbursement from the second injury fund if the employee is subsequently injured while in the course and scope of his employment and the subsequent injury results in liability due to the merger of the two conditions. La.R.S. 23:1378(A)(1).
As previously discussed by this court in Commercial Union Ins. Co. v. State, Worker’s Compensation Second Injury Board, 94-1202 (La.App. 3 Cir. 3/1/95); 651 So.2d 933, a party seeking reimbursement from the second injury fund bears the burden of proving three elements:
[The party] must first establish that the employee had a pre-existing permanent partial disability at the time of the subsequent injury. LSA-R.S. 23:1378(A). Chandler Parts & Serv. v. Workers’ Comp., 576 So.2d 1133, 1135 (La.App. 3d Cir.), writ denied, 580 So.2d 383 (La.1991); Crown Zellerbach v. La. Workmen’s Comp., 481 So.2d 650, 652 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). Secondly, he must clearly prove that the employer had actual knowledge of the permanent partial disability prior to the subsequent injury. LSA-R.S. 23:1378(A)(4).... Thirdly, he must prove that the employee incurred a subsequent injury arising out of and in the course of his employment, and that this subsequent injury merged with the preexisting permanent partial disability. LSA-R.S. 23:1378(A)(1); LSA-R.S. 23:1378(A)(3), Southern Casualty Insurance Company, 478 So.2d at 577.
Id. at 937.
UThe first and second elements of the claim as discussed in Commercial Union, are *620 not at issue on this appeal; as we note below, only the question of merger is before us. According to La.R.S. 23:1371(C), “merger” as expressed in the final element is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
See also, American General Fire and Cas. Co. v. Louisiana Worker’s Compensation Second Injury Bd., 604 So.2d 46, (La.App. 1 Cir.), writ denied, 608 So.2d 176 (La.1992).
The appropriate standard of appellate review, in this ease, is the “manifest error-clearly wrong standard.” Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. See also, Commercial Union Ins. Co., 651 So.2d 933. This standard precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Alexander, 630 So.2d 706, citing Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the instant matter, the parties stipulated that the only matter to be resolved by the trial court was whether there was merger between the preexisting permanent partial disability, diabetes, and the work-related back injury.[2] In support of its case, the plaintiff submitted to the trial court the depositions of several physicians who had treated Croehet.
IfiThe plaintiff entered into evidence the deposition of Dr. John Sabatier, an internist, who stated that he began to treat Crochet for diabetes in April of 1986. Dr. Sabatier stated that when he began seeing Crochet, the diabetes was in an advanced condition that required the use of insulin. Dr. Sabatier further stated that he “consider[ed] [Cro-ehet] to have good control of his diabetes.”
The plaintiff also introduced the deposition of Dr. Louis Blanda, an orthopaedic surgeon, who stated that he began seeing Crochet on September 12, 1991. Dr. Blanda reported that Crochet came to him complaining of “pain in his back, and also pain down into his left leg, as well as some pain in his right leg.” Dr. Blanda further stated that Crochet “attributed the onset of his problems to a July 16th, 1990 work accident.” Dr. Blanda stated that he found disk abnormalities at the L5-S1 level and the L4-5 level. He also reported knowledge of Crochet’s diabetes and that there were “findings of degenerative arthritis.”
Dr. Blanda described the surgery subsequently performed on May 20, 1992, as “a laminectomy and disk excision bilaterally at L4-5, and a decompressive laminectomy at L5-S1 on the left for stenosis.” Dr. Blanda reported that both before and after the surgery, he consulted with Dr. Michael Alexander, an internist, since Croehet was a diabetic. Dr. Blanda stated that because Croehet suffered from both carotid artery stenosis and diabetes that “for safety reasons and for the patient’s medical interests as well, we usually get an internist to help manage brittle [sic] medical problems.” Dr. Blanda reported that the sole reason for bringing in an internist for the consultation was because of Crochet’s history with diabetes. When asked whether diabetic patients are difficult orthopaedic surgery patients, Dr. Blanda responded “they’re difficult with any kind of surgery. The diabetes usually is hard to manage because of the stress and the actual surgical trauma. And healing is usually slower and delayed than in people without diabetes.”
|6When asked whether he felt that the disability from the diabetes, combined with the disability produced from the injury and the surgery created a greater disability than Crochet would have suffered in the absence of the diabetes, Dr. Blanda responded *621 “[y]eah, I think that’s correct. I mean diabetes is a medical disability whereas the herniated disk is a physical disability. I think when I released him I assigned about a twenty percent (20%) anatomical impairment secondary to his back injury.” However, Dr. Blanda also stated that the diabetes did not affect his treatment and the surgery performed on Crochet, nor did it affect the recovery from the surgery.
The plaintiff also offered the deposition of Dr. Barry Edwards, an internist, who began treating Crochet following the surgery. Dr. Edwards confirmed that Crochet had recently had back surgery and had a history of both diabetes and carotid stenosis. Dr. Edwards further reported that Crochet had a heart beat irregularity and degenerative joint disease, which Dr. Edwards stated can be related to long term diabetes.
After the presentation of this medical testimony, the district court stated, in its Reasons for Judgment, that “[t]he evidence shows that the work-related injury resulting in back surgery was, in and of itself, a severe disabling injury.” Further, the court found that “the evidence does not show that Crochet’s disability from the work-related injury and surgery was materially and substantially greater because of a combination of his previously existing diabetes and the work-related injury....” Accordingly, the district court found that the plaintiff had failed to establish “merger” between the conditions and denied the claim.
In light of the evidence presented, we are unable to find that the district court was manifestly erroneous in concluding that the plaintiff failed to meet the required burden. While there was testimony indicating that extra care was required because of Crochet’s preexisting partial disability, there was also evidence that his diabetes was under control and did not present any complication during or after the surgery. As bsuch, we find no evidence, in the testimony presented, so compelling as to indicate that the trial court’s decision was not well founded. Accordingly, we find no manifest error.
DECREE
For the foregoing reason, we conclude that the district court did not err in denying the plaintiffs claim for reimbursement from the second injury fund. The decision of the lower court is affirmed and all costs of this appeal are assessed to the plaintiff, City of Jennings.
AFFIRMED.

. La.R.S. 23:1378(E), in part, provides the following process for appeal of the board’s decision:
If an appeal is taken, the board shall be made party defendant and service and citation shall be made, in accordance with applicable law, upon the attorney general or one of his assistants. The appeal shall be to the district court for the parish wherein the hearing was held or where the accident occurred. However, if no hearing is held or if the accident occurs out of state the appeal may be taken to the Nineteenth Judicial District Court, parish of East Baton Rouge. All appeals in all such cases shall be tried de novo,

. It is clear that diabetes is correctly classified in this case as a permanent partial disability. Diabetes is listed in La.R.S. 23:1378(F) as a condition giving rise to the presumption that an employer considered the employee’s disability to be permanent and a hindrance to employment.